Mitchell *et al. vs.* The Mayor and City Council of Rome.

DANIEL R. MITCHELL *et al.*, plaintiffs in error, *vs.* The MAYOR AND CITY COUNCIL OF ROME, defendant in error.

1. The principle that the owner of a building erected on the line of his lot, may, by lapse of time, acquire a prescriptive right to the lateral support of the adjacent soil, does not exist in this State, especially against a public or municipal corporation.

2. If the work of grading a street, such as digging below the foundation of a wall, or under a wall and underpinning the same, be done by the consent or direction of one of the joint owners of such wall, neither of the owners can recover damages from the City Council by whose laborers the work was done, on account of the falling of the wall being caused by such work.

3. Where it was a question at issue whether such consent or direction was thus given, it was error in the Court to charge the jury as follows : " What they (the City Council) do, so far out of the line of their own business as to be evidently done in the execution of somebody else's job, if such owner was present and knew what was going on and made no objection, will be presumed to be done by consent or direction of such property owner, if nothing appears to the contrary. But this presumption may be rebutted by any sufficient facts or circumstances, such as that the owner of the property protested against it," etc. The jury had the exclusive right in this case to determine what presumption arose from the facts proven by the evidence.

Prescription.    Land.    Municipal corporation.    Streets. Joint tenants.    Charge of Court.    Presumptions.    Before Judge HARVEY.    Floyd Superior Court.    July Term, 1872.

Daniel R. Mitchell and Jesse Lamberth brought trespass against the Mayor and City Council of Rome for $2,000 00 damages, alleged to have been sustained by them from the cutting down and grading by the defendant of Etowah street,

below the foundation of the wall of their house, in the city of Rome, known as the "Buena Vista Hotel," causing the said wall to fall, and thereby throwing down the ell of said building.

The defendant pleaded the general issue. The evidence made substantially the following case:

The original building, called the "Buena Vista Hotel," was built by Francis Burke, in 1836 and 1837, upon the *line* of the lots, at the corner of Broad and Etowah streets—the basement then being five or six feet below the surface of the ground; it fronted on Broad street some fifty feet, and on Etowah street thirty-five or forty feet. The ell that fell was two stories high and about fifty-five feet long, fronting on Etowah street; was built in 1847, by J. J. Printup, and built on *line* of lot and street. The end of the ell is up to the old building, but the walls of the ell were not let into—not tied into—the old building, there being but a cross wall fifteen feet from the old building for the purpose of tying the long walls of the ell together. About the year 1850, Broad street was cut down and graded by the city authorities some six or eight feet, to the base or below the foundation of the said building. Some grading was also done at this time on Etowah street, but not so low as the foundation of the ell. From this time (1850) some *three* or *four* instances of digging occurred up to the last in August, 1868, mainly on Etowah street. The wall of the ell fell on the night of the 13th of August, 1868. When the street hands were about to proceed below the foundation of said ell with their excavating, Mitchell protested, as he was fearful it would fall. He was assured by those in charge of the work and the chairman of the street committee that there was no danger, that as they went down they would make it perfectly safe by underpinning. He apprehended no danger until two or three years before the house fell, when, chancing to look at the wall, he discovered that it had leaned several inches towards Etowah street. He called the attention of several of the corporate officers to this, and especially that of Mr. Perry, the chairman of the street com-

mittee. He could never understand what was the matter until after the ell fell. He had seen the street hands digging under the wall and filling in with brick, and supposed they were placing brick the entire width of the wall. After the wall fell, he discovered that the dirt had only been dug out nine or ten inches, and that the weight of the whole wall had been standing on a nine inch wall, which extended only about four feet below the foundation of the ell, for several years.

This excavation and underpinning took place some time before Lamberth had any interest in the property, and at the time he purchased a half interest, in the fall of 1867 or spring of 1868, the wall was bowed out three or four inches. The street hands were at work on the day preceding the night when the ell fell. In August, 1868, the defendant had dug eight or ten inches below the foundation of the old building, and refused to underpin it. Plaintiffs hired hands to accomplish this end. They had been engaged at this work, under the superintendence of Lamberth, for several days before the wall fell. The job was finished on the evening before. The foundation of the ell was eighteen inches.

Considerable evidence was introduced on behalf of defendant, tending to show that the excavation beneath the wall, on the evening before it fell, was done under the direction and control of Lamberth, and that the agents of defendant were careful not to undermine said wall. This was denied by plaintiffs.

The evidence was also conflicting as to whether Lamberth, as a member of the City Council, had not moved to table the claim for damages when presented to that body for payment.

The jury returned a verdict for the defendant. Whereupon, the plaintiffs moved for a new trial upon the following grounds, to-wit:

1st. Because the verdict is contrary to the law and the evidence.

2d. Because the Court erred in charging the jury as follows: "The Mayor and City Council of Rome may grade down the street whenever, in their judgment, the public in-

terest requires, and go even to the line of the street, but they must do their work in a skillful and careful manner, so as to not unnecessarily endanger the property of contiguous land owners, and when the work they propose to do would probably endanger the property of such land owners, they must give the owner reasonable notice, so that he may take timely steps to secure his property, unless the facts show the contiguous property owners to have full and timely knowledge of their intended work, without formal notice. If all these precautions and conditions are observed, the city authorities are not liable to the owners of adjacent walls if they do fall, in consequence of digging down the streets; but if the damage is for want of an observance of these precautions and conditions, they are liable."

3d. Because the Court erred in charging the jury as follows: "What they (the City Council) do which appears to have been done in executing, or aiming to execute, their own business, it will be presumed to be done under order from the corporate authorities; what they do so far out of the line of their own business as to be evidently done in the execution of somebody else's job, if such owner was present and knew what was going on, and made no objection, will be presumed to be done by consent or direction of such property owner, if nothing appears to the contrary, but this presumption may be rebutted by any sufficient facts or circumstances, such as that the owner of the property protested against it," etc.

4th. Because the Court erred in charging the jury as follows: "If the digging was done or any undermining attempted, or done under the plaintiffs' wall, who did it? The street hands or other persons employed by plaintiffs. If the street hands did it, by whose direction or what authority? If they did it without any other direction or authority than such as they received from the city authorities, the defendant is liable for any damage occasioned by it, but if they did it by any direction or authority of the plaintiffs, then the plaintffs must bear the loss."

5th. Because the Court erred in charging the jury as fol-

lows: "The plaintiffs had the right to insist that the city employees should perform skillfully and carefully what the city authorities undertook to do, but they had no right to insist that such employees should do anything that belonged to the plaintiffs to do, and if you believe, from the evidence, that there was any interference of this sort by the plaintiffs with the employees of the City Council, and that at the instance and with the knowledge of the plaintiffs, without the consent or direction of the city authorities, the city employees were induced to dig under or underpin the plaintiff's wall, and the damage ensued therefrom, then the City Council would not be liable."

6th. Because the principal of law of *damnum absque injuria* did not apply to this case, as the evidence proved that the ell had been built more than twenty years, and the owners, by prescription, had the right to the support of their wall by the adjacent earth, and the city authorities had no right to dig it away for any public purpose.

The motion was overruled, and the plaintiffs excepted upon each of the aforesaid grounds.

UNDERWOOD & ROWELL; D. R. MITCHELL, for plaintiffs in error.

HAMILTON YANCEY, for defendant.

*Damnum absque injuria:* 27 L. J. (N. S.) Q. B., 388. Power of corporation over streets: 28 Ga., R. 46; 23 *Ibid.*, 404; 34 *Ibid.*, 326; 6 Wheat, 597; Dillon on Mun. Corp., sections 524, 542; 1 Hill, 545; 33 Penn., 180; 6 W. and S., 101; 9 W. and S., 9; 6 Harris, 65; 14 S. and R., 71; 6 Wheat, 45; 14 How., 80; 1 Penn., 467; Sher. & Red on Neg., 164; Angel on High., 236. Grigg *vs.* Foote, 4 Allen, Mass., 195; Brown *vs.* Lowell, 8 Met., *Ibid.*, 172; Benjamin *vs.* Wheeler, 8 Grey, *Ibid.*, 409. Radcliff *vs.* Mayor, etc., 4 Comst., N. Y., 195; Wilson *vs.* Mayor, etc., 1 Denio, *Ibid.*, 595; Mills *vs.* Brooklyn, 32 *Ibid.*, 489. Green *vs.* Reading, 9 Watts, Penn., 382; O'Connor *vs.* Pittsburg, 18 *Ibid.*, 187. Hovey *vs.* Mayor,

etc., 43 Me., 322. Hooker *vs.* New Haven, 14 Conn., 146. Snyder *vs.* Rockport, 6 Ind., (Port.,) 237. Roberts *vs.* Chicago, 26 Ill., 249; Murphy *vs.* Chicago, 29 *Ibid.*, 279; Nevins *vs.* Peoria, 41 *Ibid.*, 502. Taylor *vs.* St. Louis, 14 Mo., 20; Hoffman *vs.* St. Louis, 15 *Ibid.*, 651; St. Louis *vs.* Gurno, 12 *Ibid.*, 414. Humes *vs.* Mayor, etc., 1 Humph., Tenn., 403. White *vs.* Yazoo City, 27 Miss, 327. Reynolds *vs.* Shreveport, 13 La., Ann, 426. So in the United States Courts: Goszler *vs.* Georgetown, 6 Wheat, 593; Smith *vs.* Washington, 20 How., 135.

The defendants, in grading its streets, are bound only to furnish sufficient skill for the proper execution of its duties; they act in a public capacity, and, like other public agents, are not liable for the trespasses of its employees, done outside of their employment: Martin *vs.* Mayor, etc., 1 Hill, 550; Bailey *vs.* Mayor, etc., 3 Hill, 531; Harris *vs.* Baker, 4 M. and Selw., 27; Hall *vs.* Smith, 2 Bing., 156; Plate Glass Company *vs.* Meredith, 4 T. R., 794.

Doctrine of prescriptive right. In Wyatt *vs.* Harrison, 3 Barn. and Ad., 871, the Court say: "If I have laid an additional weight upon my land, it does not follow that one is to be deprived of the right of digging in his own ground because mine will thus become incapable of supporting the artificial weight which I have laid upon it."

"No man, by the mere prior enjoyment of the advantages of his own land, can establish a servitude upon the land of another:" Wheateley *vs.* Baugh, 25 Penn. St., 528. Also, in Radcliff *vs.* Mayor, etc., 4 Comst., 195, where the cases are collected and the principle examined with marked ability: Foley *vs.* Wyeth, 2 Allen, 131; Thurston *vs.* Hancock, 12 Mass., 220; Lasalla *vs.* Holbrock, 4 Paige, 169.

Says Baron Alderson, in Partridge *vs.* Scott, 3 M. & W., 220: "Rights of this sort, if they can be established at all, must have their origin in grant." But as well said by a writer in the American Law Review, 1 volume, 10—"How can the assent of the adjoining proprietor be implied when he never had an opportunity to express his dissent? He could

bring no action against his neighbor for doing what he had a perfect right to do. It is a mockery to say that he might have dug up his land during the period of prescription. The doctrine has been very much shaken in England since the recent case of Solomon *vs.* Vinters Co., 4 H. and N., 585." Lord Ellenborough, in Stansell *vs.* Jollard, 1 Selw., N. P., 444, put the decision of the Court "upon analogy to the rule as to lights, etc., that he acquired a right to support."

"The analogous doctrine of lights has been so generally discarded in this country, that we are disposed to believe that the prescriptive right of support to houses will be also rejected, when fairly presented for descision:" Parker *vs.* Foote, 19 Wend, 309, New York; Myers *vs.* Gemmel, 10 Barb., 537; Richardson *vs.* Pound, 15 Gray, 387, Mass.; Paine *vs.* Boston, 4 Allen, 169; Napier *vs.* Bulwinkle, 5 Rich., 311, So. Ca.; Pierre *vs.* Fernald, 26 Me., 436; Cherry *vs.* Stein, 11 Md., 124; Ward *vs.* Neal, 37 Ala., 501; Haverstick *vs.* Sipe, 33 Penn. St., 368; Ingraham *vs.* Hutchinson, 2 Conn., 584.

In Richart *vs.* Scott, 7 Watts, 460, the Court repudiated the doctrine, though claimed under the prescriptive right of twenty-one years' use.

The authorities of the city of Rome cannot sell a street, or any part of a street. Albany and Gulf Railroad Company *vs.* Patrick K. Shields *et al.*, 33 Ga., 611; Mayor, etc., of Columbus *vs.* Jaques, 30 Ga., 506; State *vs.* Mayor, etc., Mobile, 5 Porter, 279; 3 vol. Amer. Law Times, 7. Hence, *pari ratione*, the city of Rome cannot grant an easement in its streets inconsistent with the uses and requirements of the public.

TRIPPE, Judge.

1. The ancient doctrine of title by prescription which depended on immemorial usage, has given way to the modern rule of presuming a right by grant or license to easements and incorporeal hereditaments, after twenty years of uninterrupted adverse enjoyment. To authorize the presumption, the enjoyment must not only be uninterrupted for the space

of twenty years, but it must be adverse and under a claim or assertion of right, and not by the consent or favor of another claimant or true owner: 2 Pick., 466; 11 East, 372; 4 B. & Ald., 579.    The fact that the *user* must be adverse, must exist in every such case, to authorize the necessary presumption. If the use of the easement be, *ab initio,* legal or rightful, the title of the occupant is as good at the outset as it could be by the lapse of any length of time, and there is no necessity of any presumption.    But if it be the usurpation of the property of another under a claim of right, it then becomes adverse, for it is in hostility to the title and in derogation of the rights of the original owner—an actual ouster of him.    In such cases a grant, or license, or covenant, is presumed for the purpose of quieting the enjoyment or possession thus adversely held or used.    The injured party, who may for such a long time sleep over his rights, cannot complain of this rule.    He could have had redress any day during the twenty years by action, and could have arrested by suit, at any time within that period, the continued and uninterrupted possession or enjoyment.    His remedy was in his own hands.    This right of the injured party is a cardinal fact that must exist, else all statutes of limitation, and all rules of prescription or of presumption, of license or grant, would be but rules of spoliation or robbery.    And thus exist those provisions which suspend the running of the rules of limitation against the rights of any one laboring under disabilities to assert his claim by action.

Statutes of limitation apply to cases where one is in adverse *possession* of property that may be claimed by another, and if the statutory period elapses before a counter-claim is asserted by action, the right or title of the one in possession is held legal and perfect.    The doctrine of presuming a right, by grant or otherwise, to easements, etc., exists where one is in the adverse use or enjoyment for a certain period of an incorporeal right.    This use or enjoyment cannot be adverse unless it be exercised in denial of the title and in derogation of the rights of any other owner.    It cannot be adverse to another owner unless he has a right of action on account of a wrong

Mitchell *et al. vs.* The Mayor and City Council of Rome.

done him. The damages may be but nominal, but if his right has been invaded, and there be danger that by lapse of time he may be barred from denying the claim of his adversary, he can, by a judgment, establish his title and forever determine the question of presumption of a grant. At any rate, he has the means of self-protection.

This rule, then, of presumption of right, by grant or otherwise, may well apply to claims which relate to *commons, markets, water-courses, ways,* and the like, where an adverse user or enjoyment is a direct and overt injury to the person who may be the true owner, and against whom the presumption is to be made. In all these instances there is an invasion on the property of another, or his beneficial interest in it is lessened. The wrong done may be redressed by immediate action. During all the time, which, by its lapse may raise the presumption against him, he has it in his power to arrest that presumption by asserting his right and having it settled by a judgment. But it is difficult, if not impossible, to see how this doctrine can be made to apply to those instances of easements, so called, where there is no possession of anything belonging to another, no encroachment upon another's right, no adverse user, in fact, nothing done whatever, against which another could complain, or for which an action could be brought, and no remedy existing whereby to prevent such a presumption from arising. If it does so apply, a person would be compelled to submit to the loss or depreciation of important rights, or to a damaging interest accruing to another by mere lapse of time, and be utterly powerless to prevent it, save, perhaps, by some churlish or expensive appropriation of his property to uses or purposes hurtful to himself and offensive to his neighbor. Thus, for instance : if this doctrine exists in the case of lights or windows overlooking the premises of an adjoining proprietor, simply because they have been used for twenty years, (and after that time no building can be erected to interfere with such lights,) then as such proprietor of the adjacent land has no right of action, no claim for damages for a wrong done, he will be forced to build at the dicta-

tion of another, or to set up an obstructing wall, merely to show he is lord of his own soil, or forever lose the right of the free use of his property. A servitude on his land might become fixed, simply because he might not be prepared to build within a given time.

It is true this doctrine of acquiring a presumptive right to light and air by mere length of enjoyment, has been held for many years in England, and in a few of the States of the Union. But in most of the States it has been decided not to have been the doctrine of the ancient common law, is not the law of this country, and is not suited to the condition of a country which is growing and changing so rapidly in all its relations of property, as well as its value and modes of enjoyment: 19 Wend., 309; 10 Barb., 537; 15 Gray, 387; 33 Pa. St. R., 368; 37 Ala., 501; 5 Rich., 311; 2 Conn., 584; 26 Me., 436; 11 Md., 1; Wash on Easements, 498; Cooley's Blackstone, 2 book, 36 (note 20.) In Parker *vs.* Foote, 19 Wendell, it is styled "the modern English doctrine," "an anomaly in the law," "a departure from the old law." It is further said, "it may do well enough in England, * * but it cannot be applied to the growing cities and villages of this country without working the most mischievous consequences: 3 Kent's Com., 446, (note a.)

The decisions thus far referred to were cases involving the question of a prescriptive right, from long enjoyment, to light and air. But every principle or reason advanced in support of them applies with full force to a claim of right by the owner of a building erected on the line of his lot to the lateral support of the adjacent soil, on the ground that his building has been standing there for a given number of years. Neither in the case of the window opening out on another man's land, or of a building erected on the dividing line, has the owner committed an act against which his neighbor can protest. He has not touched his property, or invaded any right, or given any cause of action. He had a right to use or build on his lot to the farthest limit of his boundary. He has only done this, and never has had any use, or possession, or enjoyment

Mitchell *et al. vs.* The Mayor and City Council of Rome.

of any right, corporeal or incorporeal, belonging to another, to which objection could in any form be made, and "it would, therefore, be a misuse, as well as an abuse, of the terms *license, grant and acquiescence*, to say he has acquired a right by means thereof from the owner of the adjacent lot. This was so expressly decided in Hoy *vs.* Sterrett, 2 Watts, 227 ; Richart *vs.* Scott, *Ibid.*, 460. The grounds upon which these decisions are put are precisely the same as those in the cases applicable to lights and air. As has been well said by a writer in the American Law Review, 1 volume, 10—"How can the assent of the adjoining proprietor be implied when he never had the opportunity of expressing his dissent ? He could bring no action against his neighbor for doing what he had a perfect right to do. It is a mockery to say he might have dug up his land during the period of prescription. The doctrine has been very much shaken in England since the recent case of Solomon *vs.* Vinters Company, 4 H. & N., 585 ;" and adds further, "the analogous doctrine of lights has been so generally discarded in this country that we are disposed to believe that the prescriptive right of support to houses will be also rejected when fairly presented for decision."

As was said of the doctrine of a prescriptive right to lights, already quoted, so it may be said of this, as claimed by plaintiff in error, "it cannot be applied to the growing cities and towns of this country without working the most mischievous consequences." In *Mayor and Council of Rome vs. Omberg*, Judge LUMPKIN said: "People purchase property and build in towns with full knowledge of the public necessity to have streets by excavating or elevating as the case may demand; and they must take the chances and consequences." I conclude on this point with the words of our young brother who ably argued it for defendant in error. "One building on his own land is clearly in the exercise of his legal rights. There is *no encroachment* upon the land or rights of another; *no occupation* of that which belongs to another; *no adverse possession* under a claim of title. No one can have a right of action against him, for he has not trespassed upon or vio-

Mitchell *et al. vs.* The Mayor and City Council of Rome.

lated the rights of any other person. How then, can he, by this lawful use of his own land for twenty years, acquire a beneficial interest in the land of his neighbor?"

2. We do not think there was any liability on the part of the city for any work that might have been done by the direction or consent of either of the plaintiffs. They were tenants in common, and were in joint possession, and are joint plaintiffs. If one had confederated with third parties to have committed willful damage or trespass, the question might be different. But if it be proven that work is done upon the common property by the approval or direction, of a joint owner in possession, there is no liability on the one who does the work simply for executing the directions of his employer.

3. But where it was a question in issue whether such consent or direction was given, we think the Court went too far in charging the jury, "what they (the City Council) do so far out of the line of their own business *as to be evidently done in* the execution of *sombody else's* job, if such owner was present and knew what was going on, and made no objection, will be presumed to be done by direction or consent of such property owner, if nothing appears to the contrary. But such presumption may be rebutted," etc. In the first place, the charge assumes that what was done, of which complaint is made and for which suit is brought, was evidently *somebody else's* job—to-wit: that somebody, other than the City Council had it done. That was a disputed fact, and one for the jury exclusively. Secondly, section 3699 of the Code, says presumptions of fact are exclusively questions for the jury. We think it was the right of the jury in this case to determine what presumption arose from the facts proven by the evidence, and for this reason remand the case for a new trial: See *Macon and Western Railroad vs. McConnell,* 27 *Ga.,* 482.

New trial granted.