BLOUNT, administrator, *v.* BEALL.

1. There was no abuse of discretion in refusing a continuance because of the absence of a material female witness who had not been subpœnaed and whose testimony had not been taken by interrogatories, although the witness had, for the purpose of testifying in the case, voluntarily attended the court for several days before the trial and had promised the defendant's counsel on the day immediately preceding the trial to be in court next morning to testify.

2. Although the plaintiff's daughter resided with and was dependent upon the plaintiff for a support, the daughter was not by reason of these facts so interested in the result of the suit as to be excluded from testifying as a witness under the evidence act of October 29th, 1889. Nor was the plaintiff herself, under any provision of that act, incompetent to testify to transactions or communications which did not occur between herself and the intestate of the administrator who was the defendant in the action.

3. Although a witness may have persisted in repeating a statement which the court had ruled was irrelevant and improper, yet where the trial judge distinctly informed the jury that they must disregard the statement so made by the witness, this court will not overrule the discretion of the trial judge in holding that the impropriety on the part of the witness was sufficiently corrected.

4. Although testimony may have been admitted without objection, it is the privilege of the party against whom such evidence bears to afterwards move to rule it out for irrelevancy, and it is not proper for the court, in refusing to grant such motion, to remark: "Too late. The mill will never grind with the water that has passed." If, however, the testimony in question was for any reason relevant, neither the refusal to rule it out, nor the objectionable language by the court, is cause for a new trial.

5. The statute of limitations does not begin to run in favor of a bailee until he denies the bailment and converts the property to his own use.

6. Hence, where one deposited with another certain personal property as collateral security for the payment of a loan of money, and the loan was paid at maturity and demand made of the holder of the collateral for its return, and the holder promised, but failed, to make return, and the demand was repeated at intervals for several years, with like promises and failures on the part of the holder, and, after ten years had elapsed, the holder informed the owner that the property had been lost, but never denying the bailment or setting up any adverse title to the property, the statute of limitations certainly did not, before this acknowledgment by the bailee was made, begin to run in favor of the holder of the collateral.

7. Where, under the facts above recited, the holder of the collateral promised to pay the depositor a certain amount agreed upon between them as the value of the property, which promise was accepted by the latter, it became an account stated, the damages became liquidated, and the statute did not until then begin to run against the depositor.

December 21, 1894.

Complaint on account. Before Judge Van Epps. City court of Atlanta. May term, 1894.

Mrs. M. E. Beall sued the administrator of L. J. Gartrell on the following account: "General L. J. Gartrell, to Mrs. M. E. Beall, dr. 1889–90. To one diamond finger-ring left with him, lost by him, and for which he agreed to pay the sum of $500." The declaration was filed on July 11, 1892. Defendant demurred for want of a cause of action, and the demurrer was overruled. He pleaded, in addition to the general issue, the statute of limitations, and set-off. The jury, on May 31, 1894, found for the plaintiff $500 principal, $151.66 interest, and cost; and a new trial was denied. To the overruling of the demurrer, and of the motion for a new trial, defendant excepted.

The plea of the statute of limitations alleges, that if any promises were made by the decedent to pay for the ring sued for, the first promise was made more than four years next before the commencement of the suit, and that no subsequent promise is in writing, either in the party's own handwriting or subscribed by him or some one authorized by him. The plea of set-off alleges, that during his life General Gartrell maintained and supported the plaintiff and her daughter Miss Lula Beall, and gave them a home for and during the term of five years from 1885 to 1891; that he furnished them with board and lodging in his own house, equal in every respect to that enjoyed by his own family, for which trouble and expense neither he nor his administrator has ever been paid or received any compensation, and

which accommodations so furnished were reasonably worth $360 a year; and that plaintiff undertook and promised to pay said reasonable sums.

1. Defendant moved to continue the case on the ground of the absence of Mrs. E. M. G. Bailey, his counsel stating that she was a very material witness, and that she had been in regular attendance on the court to testify every day for several days before the day of trial, and had promised the counsel, on the afternoon immediately preceding, to be in court next morning to testify. The court inquired whether counsel had made any effort to take her interrogatories; and counsel replied that he had not, as he relied on the witness's willingness and promise to be present. Thereupon the court overruled the motion to continue. It was not stated at that time what was expected to be proved by the witness, because the court ruled that if defendant and his attorney relied upon the promises of an unsubpœnaed witness, not subject to subpœna, to attend and testify, they were only entitled to such performance on her part as she would voluntarily render; and any further showing was thereby prevented. She resided in Fulton county. She was in attendance as a witness on the day the trial commenced, though she had not been subpœnaed, and stated to defendant's attorney that she would return the next morning and testify. She was not absent by the procurement or consent of defendant, but he and his attorney believed she would attend and testify as promised. Defendant expected to prove by her, that she was present when Mrs. Beall wanted to borrow some money from General Gartrell, and offered to pledge the diamond ring referred to as collateral security, but he refused to accept it, saying he did not want it as collateral; and he also said it was not worth $25 anyway. But the ring was pledged as collateral nevertheless. Mrs. Beall insisted upon it being received

as collateral; and thereupon it was done. Witness was familiar with the circumstances of Mrs. Beall's husband at the time of their marriage, and he was not a rich man, but poor, and unable to buy such a fine ring. Defendant's counsel knows, from conversations between himself and this witness, that she would have testified in the manner stated, if she had been sworn as a witness in this case.

2. Defendant objected to the competency of the plaintiff and her daughter as witnesses, on the ground, as to plaintiff, that the material facts to which she testified were parts of the transactions with the deceased, and as to the daughter, that she was interested in the suit. It is alleged that the court erred, in holding that the daughter was a competent witness under the act of Oct. 29, 1889; in refusing to allow defendant to show by the daughter herself that she was dependent on her mother for support, except as bearing on her credibility, and not for the purpose of excluding her as a witness; and in holding that plaintiff was competent as to any transaction or communication which did not occur between her and deceased, and in allowing her to testify as to the sale of her furniture, and as to the value of her ring, one of the heirs of the deceased having been introduced by defendant and having testified as to its value.

3. On the direct examination of the plaintiff she testified that the ring "was worth the price he set on it." On defendant's motion this statement was ruled out. On further examination by her counsel, plaintiff made the same statement. The court told her she could not state anything which occurred between her and the deceased. Afterward, on cross-examination, she again repeated the objectionable statement before she could be checked by the court or counsel. Thereupon the court told the jury that they must disregard the statement just made by the witness. Defendant alleges that he ought to be

granted a new trial because of this unfair conduct of plaintiff.

4. The plaintiff's daughter testified that "her uncle was well off; he left considerable property." This testimony was not objected to when offered. Afterwards defendant's counsel moved to rule it out, on the ground that it was not competent in this action to prove the means or wealth of the deceased. The court held that counsel could not sit by and allow objectionable testimony to come in and then have it ruled out at a subsequent stage of the case, on an objection known and not taken advantage of at the time. While plaintiff was being examined, her counsel proposed to show by her what was the means or financial condition of her brother, the deceased. Defendant objected that such testimony was incompetent. The court, sustaining the objection, remarked, "There is some evidence on that subject already in, without objection." By defendant's counsel: "Then we move to rule it out." The court: "Too late. The mill will never grind with the water that has passed." Defendant says it was error to call the jury's attention to what was in evidence without objection, and to emphasize it by the remark quoted, and to refuse to rule out the incompetent testimony; the effect of the remark and of the ruling being to impress the jury strongly that the objectionable testimony was proper for their consideration. The court also failed to charge the jury to disregard this testimony, though no request so to charge was made. In a note to this ground the court states: "It was competent to show that the brother was of ample means, and the aged widowed sister of no means at all, as bearing on the question of asylum or boarding-house."

5–7. At the close of plaintiff's evidence, defendant moved for a nonsuit on the ground that, on her showing, her claim was barred by the statute of limitations.

The motion was overruled; and the court, in charging the jury, instructed them that the statute of limitations was not in the case. Errors are assigned upon these rulings, and upon the refusal of the court to charge, as requested, in the language of sections 2918, 2934 and 2931 of the code, and as follows: "Constructive fraud will not prevent the bar of the statute from attaching, but it must appear that the deceased acted corruptly and committed actual fraud or such as involved moral turpitude."

A. H. DAVIS and KING & ANDERSON, for plaintiff in error. WESTMORELAND & AUSTIN, *contra*.

ATKINSON, Justice.

The facts necessary to an understanding of this case appear in the official report.

1. Motions to continue are addressed to and are generally within the sound legal discretion of the court. The exercise of proper diligence by suing out the interrogatories of this witness, or by taking her depositions—it appearing that she was a resident of the city of Atlanta,—would have secured her testimony so that it could have been used upon the trial of this case. If, therefore, the defendant had availed himself of the means afforded by the law to procure the testimony desired, it would not have been necessary to have presented this motion to continue. The motion itself does not appear to have been wholly without merit, and this court is not prepared to say what would have been its decision with respect thereto if called upon as an original proposition to rule thereon. The exercise of this discretion, however, is one of the functions of the trial court; and inasmuch as this court is not prepared to say from the record that the trial judge committed an error of law in refusing to continue the case, it will not undertake to control his discretion.

2. The plaintiff was the bailor of the property for the value of which she brought this suit. The bailee was dead. Upon the trial the daughter of the bailor was offered as a witness to prove the bailment and certain negotiations thereafter between the bailor and bailee looking toward the restitution of the thing bailed. It appeared that the witness lived with her mother, the bailor, and was dependent upon her for a support. Objection was made to the competency of this witness under the act of October 29th, 1889, to testify as to any transactions with the deceased party. We do not think this objection was well founded. This witness was no party to the record—was in no sense interested in the result of the litigation. She does not come within either of the classes of persons who by the terms of said act as witnesses are proscribed. Whatever personal interest she might have felt in the result of her mother's suit, she had no such legal interest in the thing in controversy as disqualified her as a witness.

3. The duty of administering the proper correctives to contumacious, refractory and loquacious witnesses devolves upon the judges of the trial courts. These courts can best judge what is the proper corrective to apply in a given case. This court will not undertake to control or give direction to the trial courts, unless, in the exercise of their discretion with respect thereto, manifest injustice has been done to the party complaining.

4. During the progress of the case a witness testified that her uncle, the defendant's intestate, was well off, and that he left considerable property. This testimony was not objected to at the time, but the defendant afterwards moved to rule it out on the ground that it was not competent to prove the means or wealth of the deceased. The court ruled that this could not be done, inasmuch as the testimony had come in without objection. While the plaintiff was being examined, her

counsel proposed to show by her what the means or financial condition of the deceased was, and the defendant objected upon the ground that such testimony was incompetent; whereupon the court, in so ruling, remarked that there was some evidence in on that subject already without objection. Defendant's counsel then moved to rule it out, and the court remarked, "Too late. The mill will never grind with the water that has passed." A motion to rule out testimony illegally admitted even without objection is never too late until the cause is finally submitted to the jury. If the testimony is illegal, it should not be considered by the jury, and if it is not to be considered by the jury, it should not be admitted for their consideration. The admission of illegal testimony at the instance of one party does not justify the admission of illegal testimony at the instance of the other. The law recognizes no such thing as an equation of errors, and the true remedy is, when an error is committed, to correct that by doing what is right, and not seek to excuse it by the commission of another error. The motion of the defendant was in time; and while we do not approve the language of the trial judge in refusing to rule out the evidence, or the reason assigned by him for this refusal, we think he committed no error of law. We think the testimony was relevant. It was contended by the defendant, that for many years this plaintiff and her daughter had been to a great extent dependent upon the bounty of the deceased for their livelihood; that he furnished them with board and lodging equal in every respect to that of his own family, and for this the defendant, the deceased's administrator, claimed a set-off, alleging that such support of the mother and her daughter was reasonably worth three hundred and fifty dollars. The deceased was a gentleman of high character, prosperous and successful in his chosen profession; and this evidence was admissible to show, at

least inferentially, to the jury that it was not probable that a man of his wealth and respectable connections would compel his sister and her dependent daughter to pay him for their support. It was such a circumstance as they were entitled to have submitted to the jury, its weight to be determined by them; and we think the court committed no error, either in admitting the testimony in the first instance, or in the second, in declining to rule it out.

5-7. We will now consider the plea of the statute of limitations, and therewith a motion for a nonsuit made by the defendant at the conclusion of the plaintiff's case, the motion being based upon the ground that it appeared that the plaintiff's cause of action was barred by that statute. It appears, that in the year 1879 the plaintiff borrowed from the defendant's intestate the sum of one hundred dollars, and delivered in pledge to the latter the ring for the value of which she brought this suit; that in December, 1879, she repaid the money borrowed and demanded the restitution of the ring pledged; that the deceased did not deliver to her the ring, alleging as a reason that he had left it at his office, and when she applied there for it afterwards, deceased stated that he had mislaid the ring, but would find it and restore it; that she made repeated demands for the restitution of the ring, and was always met by the statement of her brother that as soon as he could find it he would restore it to her; that these occasional demands and promises of restitution were continued from time to time until 1890, when the deceased informed the plaintiff that it would be impossible for him to make restitution of the ring, that he had sought diligently for it and had been unable to find it, but that he would pay her five hundred dollars therefor. It was insisted by the defendant's counsel, that the first demand and failure to restore the property was such a refusal to make restitution as

amounted to a conversion of the property, and that the right to recover the value of the property delivered in pledge was therefore barred by the statute of limitations; and that inasmuch as the plaintiff's cause of action was so barred, the express promise to pay could amount to nothing more than an oral promise to pay a debt which was barred by the statute of limitations. We do not think this contention is well founded. We do not think that the pledgor was bound to treat a mere failure to deliver upon demand as a conversion of the property pledged. She might have done so, or she might have relied upon the repeated promises of the bailee to make restitution—he at no time claiming any interest in the thing bailed,—and thus a continuing bailment existed up to the time of an actual adverse holding or claim by the deceased. It has been adjudged by respectable authority that the statute of limitations does not run in favor of a bailee until he sets up an adverse claim in respect of the bailment. See Marr, administrator, *v.* Edward Kubel, Mackey's Reports, vol. 4, page 577, Reizenstein *v.* Marquardt, Lawyers' Reports Annotated, book 1, page 318, and cases cited in the note thereto. The evidence showed that there was never an adverse claim set up by this bailee until 1890, and then he set up no claim adverse to the right of the plaintiff, but, admitting his liability, promised to pay her the sum of five hundred dollars, presumably as liquidated damages for the failure to restore it. Immediately upon his refusal to deliver the property, or upon his final admission of inability to make restitution, she would have been entitled to bring an action as for a conversion. There was a *bona fide* subsisting obligation upon his part to pay to her the value of the thing bailed, and that obligation was the consideration of the promise sued upon in this case. This suit was brought within the period limited by law, within four years from the date the promise was made.

Therefore it was within the statute.    The court properly overruled the motion to nonsuit.

Upon a careful review of the testimony in the case, we are fully persuaded that the plaintiff proved her cause of action and established her right to recover.    The verdict of the jury is in accord with the evidence, and the court did not err in refusing to grant a new trial.

*Judgment affirmed.*