24251, 24258.   HASTY v. WILSON et al.; and vice versa.

740

Argued September 14, 1967—Decided October 20, 1967—
Rehearing denied November 9, 1967.

*Stone & Stone, Noah J. Stone, Hugh W. Stone, Hurt, Hill &
Richardson, James C. Hill, Cicero Garner, Jr., Bonneau Ansley,
Jr.,* for appellant.

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, William
G. Vance, George B. Haley, Jr.,* for appellees.

Undercofler, Justice. This is an action to enjoin the closing
of an alley. It is in four counts claiming an easement on the
basis of (1) express grant, (2) adverse use for more than seven
years, (3) way of necessity, and. (4) public use and dedication.

The court sustained general demurrers to Counts 1, 3, and 4, and granted summary judgment to the defendants on Count 2. The plaintiff appeals to this court enumerating as error the rulings on the general demurrers, on certain special demurrers, on the grant of the summary judgment and on the admissibility of certain evidence. The defendants cross appeal enumerating as error the admission of certain evidence.

■ Without elaborating on the niceties of the legal distinction between easements in gross and easements appurtenant, we hold the question involved herein to concern the latter. See *Stovall v. Coggins Granite Co.*, 116 Ga. 376 (42 SE 723).

■ On the hearing of the motion for summary judgment on Count 2, the essential facts show that the plaintiff is the owner of the Imperial Hotel property which fronts 70 feet on the east side of Peachtree Street in Atlanta. The defendants hold title to the property on the north side thereof to Forrest Avenue. The alley in dispute runs north 90 feet from the rear of the Imperial Hotel property, approximately parallel to Peachtree Street, through the defendants' property to Forrest Avenue. The alley is 13.6 feet in width, well defined, with stone walls along a portion of it and paved with large stone blocks set on a sand foundation. The alley has been of the same size and in its present location since about 1937 and used by the various owners of the Imperial Hotel, their tenants, and the public from that time; since 1951 the owners of the hotel have made extensive repairs on the alley and its walls openly and notoriously each year; prior to 1951 the evidence is conflicting as to repairs that were made.

About 1944 Emory University sold the hotel property to the Imperial Hotel Company. On March 1, 1951, the Imperial Hotel Company sold the hotel property to the Imperial Investment Co., Ltd., a limited partnership. Sometime prior to 1951, the property north of the hotel property was purchased by Fred B. Wilson, defendants' predecessor in title. On October 31, 1963, the Imperial Investment Co., Ltd., conveyed the property and the easement in the alley to the plaintiff, James R. Hasty, previously designated as a limited partner of the Imperial Investment Co., Ltd.

742

Glenn S. Loudermilk, designated as general partner of the Imperial Investment Co., Ltd., individually leased the Imperial Hotel with the exception of the "Blue Room" on March .1, 1948, from the Imperial Investment Co., Ltd.'s predecessor in. title and shortly thereafter, the exact date not appearing· in the record, assigned the lease to the Imperial Operating Co., Inc., which continued the operation under its lease until its expiration on September 30, 1958. Glenn S. Loudermilk was the sole stockholder of the Imperial Operating Co., Inc.

From prior to 1949 until October 1, 1957, Glenn S. Loudermilk individually leased the property north of the hotel property and east of the alley together with the right to use said alley. Beginning October 1, 1957, he leased from Fred B. Wilson for a period of 10 years including renewal options all property north of the hotel property and at the time of the filing of this suit was still a tenant of said property.

■ "While a right of private way over another's land may arise by prescription from seven years' uninterrupted use through improved lands (*Code* §§ 85-1401, 83-112; *Rogers v. Wilson*, 171 Ga. 802 (4) (156 SE 817)), where, as in this case, a private way is claimed by prescription, the party setting up such claim must bring himself strictly within the requirements of the law (*Nott v. Tinley*, 69 Ga. 766); and in order to set up such prescriptive right of way, it is essential that the prescriber show, not only that he has been in the uninterrupted use thereof for seven years or more, that it does not exceed fifteen feet [now 20 feet (Ga. L. 1953, Nov. Sess., p. 98)] in width, and that it is the same number of feet originally appropriated, but also that he has kept it open and in repair during such period. *Woolbright v. Cureton*, 76 Ga. 107; *Collier v. Farr*, 81 Ga. 749 (7 SE 860); *Aaron v. Gunnels*, 68 Ga. 528; *Hall v. Browning*, 195 Ga. 423, 424 (1) (24 SE2d 392)." *Burton v. Atlanta & W. P. R. Co.*, 206 Ga. 698 (1) (58 SE2d 424).

"Prescription is the right to property which a possessor acquires by reason of the continuance of his possession for a period of time fixed by law. Such possession to be the foundation of a prescription must be in the right of the possessor, and not of another, and must be public, continuous, exclusive, un-

interrupted, and peaceable, and be 'accompanied by a claim of right.' *Code* §§ 85-401, 85-402. 'Adverse possession is usually a mixed question of law and fact—whether the facts exist which constitute adverse possession, is for the jury to judge. Whether, assuming the facts proven to be true, they constitute adverse possession, is for the court to decide.' *Thompson v. Fouts,* 203 Ga. 522 (2) (47 SE2d 571). An inchoate prescriptive title may be transferred by the possessor to a successor, so that the successive possessions may be tacked to make out the prescription. *Code* § 85-416." *Olsen v. Noble,* 209 Ga. 899, 904 (76 SE2d 775). The claim of right or title may be evidenced by acts or conduct in relation to the property possessed which are inconsistent with the true owner's title. *Ewing v. Tanner,* 184 Ga. 773, 780 (193 SE 243); *Allen v. Allen,* 196 Ga. 736, 744 (2) (27 SE2d 679); *Collier v. Farr,* 81 Ga. 749, 753, supra; *Nassar v. Salter,* 213 Ga. 253, 255 (98 SE2d 557). In other words, the plaintiff's claim of prescriptive title is dependent upon whether or not he and his predecessor in title, the Imperial Investment Co., Ltd., were adversely using the alley under a claim of right. *Olsen v. Noble,* 209 Ga. 899, 905, supra; *Cook v. Gammon,* 94 Ga. 298 (20 SE 332).

The defendant raises the question that the Imperial Investment Co., Ltd., acquired no prescriptive rights in the alley for the reason that Glenn S. Loudermilk was the sole general partner of the Imperial Investment Co., Ltd., and that since he was leasing individually a portion of the adjoining property including the right to use the alley during the time he was such sole general partner, prescription could not run in favor of the partnership while he was in such possession.

The defendant then argues that since Glenn S. Loudermilk's interest as sole general partner terminated on January 1, 1958, and the Imperial Operating Company's lease expired on September 30, 1958, the plaintiff has not had the required statutory 7 years' possession since that time which is necessary to establish a prescriptive right in the alley as a matter of law.

We believe the contentions of the defendant are unsound for the following reasons: The evidence regarding the partnership ownership of the hotel shows that title to the hotel property

was taken in the name of Imperial Investment Co., Ltd., a limited partnership composed of Glenn S. Loudermilk as general partner, and Newell Edenfield, J. R. Hasty (plaintiff herein), James K. Rankin and Ralph E. Stevens as limited partners; that Glenn S. Loudermilk individually had a lease to operate the hotel property with the exception of the "Blue Room" from the Imperial Hotel Company, its former owner; that shortly after March 1, 1948, he assigned this lease to the Imperial Operating Co., Inc., of which company he was the sole stockholder; that he and the other members of the limited partnership purchased the hotel property from its former owner subject to his lease; that shortly after the property was purchased, the partnership started making repairs on the hotel; that James R. Hasty was the partner generally responsible for the repair and upkeep of the hotel; that the hotel was extensively repaired and redecorated under his direction and management; that he drew the plans for 3 major additions to the hotel, hired the workers for one of them, that he supervised their work and had the responsibility for the completion of the additions; that Hasty had the largest ownership interest in the hotel; that he personally, and with the help of laborers, when needed, did most of the repair work on the alley and its walls; that Edenfield and Rankin negotiated a lease for the operation of a restaurant in the hotel with Joe Daole; that although the partnership was in the form of a limited partnership, the several limited partners, particularly James R. Hasty, Newell Edenfield and James K. Rankin each had the authority of the partnership to do these various acts and things and that the partnership ratified them.

In 1952 (Ga. L. 1952, p. 375) the General Assembly passed an Act entitled the "Uniform Limited Partnership Act," Section 30 (2) of which provides that a limited partnership formed under any statute of this State prior to the adoption of the 1952 Act, until or unless it becomes a limited partnership under the 1952 Act, should continue to be governed by the provisions of Chapter 75-4 of the 1933 Code of Georgia (as found in the Acts of 1837, p. 585, as amended by the Acts of 1943, p. 335). *Code Ann.* § 75-430.

Since the deed to this limited partnership was made to it

in 1951 and there is nothing in the record to show that it comes within the 1952 Act, this case must be construed under the law as it existed prior to the passage of the Uniform Limited Partnership Act of 1952.

Former *Code* § 75-403 declares: "The general partners *only* shall be authorized to transact business, and sign for the partnership, and to bind the same." (Emphasis supplied). In former *Code* § 75-414 it is provided: "A special partner may at any time examine into the conditions and progress of the partnership concerns, may advise as to the management of the same, and, when the general partner or partners may be rendered incompetent to act on account of illness, temporary absence, or other cause, may direct and control the business of the partnership as a general partner may do: Provided, such special partner, before assuming such direction and control, shall cause to be placed in a position easily to be seen by all parties dealing with said partnership a placard or sign showing who are the general and who the special partners constituting such partnership; otherwise the special partner or partners shall not transact any business on account of said partnership, nor be employed for that purpose as agent or in any capacity akin thereto. If, contrary to the provisions of this section, the special partner shall in any manner interfere with the business and affairs of the partnership, he shall be deemed a general partner." Under the evidence, a question of fact exists as to whether or not Glenn S. Loudermilk was the sole general partner of the Imperial Investment Co., Ltd.

"At common law, when real estate was conveyed to a partnership, the title vested in the individual partners as tenants in common, but 'in equity real estate of the firm is considered personal property to the extent necessary to pay debts. . .'" *Bank of Southwestern Georgia v. McGarrah*, 120 Ga. 944 (3), 948 (48 SE 393); *Hartnett v. Stillwell*, 121 Ga. 386 (1) (49 SE 276, 104 ASR 151); *Code* § 75-210.

Prior to the Uniform Limited Partnership Act of 1952 (Ga. L. 1952, p. 375), we do not find any distinction in the legal title held by partners in a general or by a limited partnership. See *Clement A. Evans & Co. v. Waggoner*, 197 Ga. 857 (1b)

(30 SE2d 915). Accordingly, in the instant case, even if the jury found that the limited partners did not in fact become general partners by their acts, the limited partners still held title to the property herein as tenants in common with the other partners, both limited and general. Furthermore, we find no reason why a limited partner, as a tenant in common of the real estate of the partners, cannot acquire prescriptive rights under the provisions of *Code* § 85-1401 even though one of the other tenants in common might be barred from acquiring such prescriptive rights because of his purported permissive possession. See *Cox v. Zucker,* 214 Ga. 44 (102 SE2d 580). Powell, Actions for Land, 415, § 351.

"Wherever two or more persons, from any cause, are entitled to the possession, simultaneously, of any property, a tenancy in common is created. . . The fact of inequality [of shares] shall not give the person holding the greater interest any privileges, as to possession, superior to the person owning a lesser interest, as long as the tenancy continues." *Code* § 85-1001.

Title of tenants in common is technically several rather than joint. *Blake v. Black,* 84 Ga. 392 (2) (11 SE 494). It follows that one cotenant cannot deprive the other cotenants from prescribing adversely against a third party. The third party here could have lawfully interrupted or prevented the adverse possession of the other cotenants of the partnership. *Mitchell v. Mayor &c. of Rome,* 49 Ga. 19, 26 (1) (15 AR 669).

The contention that Glenn S. Loudermilk was the sole lessee of the hotel property under the lease from the Imperial Investment Co., Ltd. is without foundation because the evidence shows that the Imperial Investment Co., Ltd. retained a portion of the hotel premises which was leased to other persons.

The evidence introduced in support of Count 2 on the motion for summary judgment raised issues of fact which should be decided by a jury and the court erred in granting the defendants' motion for summary judgment.

■ The allegations of Count 1 show that the Imperial Hotel was built in 1911. Prior thereto the defendants' predecessors in title acquired the property located north of the hotel property on either side of the alley through two separate conveyances

which contained a right of easement in the alley. At that time the alley was only 65 feet in length extending from Forrest Avenue south to a rock stable and did not join the hotel property. The allegations of this count show that the rock stable was demolished and the alley extended an additional 25 feet to the hotel property. There is no allegation made as to whether any subsequent deed, after the extension of the alley, conveyed the easement in the alley until the Imperial Investment Co., Ltd. deeded the hotel property to the petitioner in 1963.

The claim of an express grant of an easement in the alley contained in the conveyances to the defendants' predecessors in title under the allegations of this count is insufficient. The easement described therein extended from Forrest Avenue to a rock stable and did not extend to the Imperial Hotel property. It is not the same alley in which an easement is claimed in this count but a portion thereof which was manifestly for the benefit of the property owners "adjoining" the alley.

The plaintiff argues in his brief that there was a merger of his land and the defendants' land in a common grantor from 1929 until 1944, that during such merger of title the stable was demolished and the alley extended to serve the hotel, that his deed was the first deed from such common grantor, and that these facts created an express grant in his favor. However, the allegations of this count do not show these facts.

Accordingly, Count 1 fails to set out sufficient allegations on which to base the claim of an express grant and the court did not err in sustaining the general demurrer thereto.

■ Count 3 is based on a way of necessity under *Code* § 85-1401 which provides: "The right of private way over another's land may arise . . . by implication of law when such right is necessary to the enjoyment of lands granted by the same owner." This count alleges that the plaintiff's ownership and the defendants' ownership of said lands stem from a common predecessor in title and that the continued use of the alley is necessary to the full enjoyment and use of his property and that there is no other means of ingress and egress for purposes of furnishing the petitioner's property with the supplies necessary to conduct his hotel business.

A way of necessity arises in this State by implication of law under *Code* § 85-1401 when the common owner sells the dominant estate first and retains the servient estate. The common owner is impliedly deemed to have granted an easement to pass over the servient estate. *Calhoun v. Osburn*, 186 Ga. 569, 571 (2) (198 SE 706). However, if the common owner sells the servient estate first, he has deeded everything within his power to deed and retains no easement in the servient estate. Therefore, when the common grantor subsequently deeds the dominant estate to a third party, the third party can obtain no higher interest than that of the grantor and receives no easement over the servient estate. *Hogan v. Cowart*, 182 Ga. 145 (1) (184 SE 884) ; *Srochi v. Postell*, 206 Ga. 59, 62 (1) (55 SE2d 603).

It is essential to the plaintiff's claim of a way of necessity on this basis that he allege that his deed was first in order of time from the common grantor. The petitioner is presumed to have alleged facts most strongly in his own favor and since it is not alleged which deed was obtained first from the common grantor, it must be assumed on demurrer that the defendant's predecessor in title was first in time of conveyance. *Hogan v. Cowart*, 182 Ga. 145 (1b) ; *Srochi v. Postell*, 206 Ga. 59, both supra.

" 'Before one can assert a way of necessity over the land of another, every essential requisite to such a right must affirmatively appear. Not only the necessity of ingress to and egress from his own land must exist, but it must further be alleged that there is no other suitable outlet' (*Tift v. Golden Hardware Co.*, 204 Ga. 654 (51 SE2d 435)) ; and 'One is not allowed to claim a road over another's land as a way of necessity, when he has or can have such way over his own.' *Russell v. Napier*, 82 Ga. 770 (9 SE 746)." *Burton v. Atlanta & W. P. R. Co.*, 206 Ga. 698 (2), supra.

Since the petitioner's land fronts 70 feet on Peachtree Street and the plaintiff's allegations in this count fail to set out a way of necessity by implication from a common grantor, the trial court properly sustained a general demurrer to Count 3 of the petition.

■ The only factual allegations of Count 4 regarding public use are that the City of Atlanta used said alley in driving its

garbage and trash trucks over it to collect refuse at the rear of the hotel and by its fire department in reaching the hotel for fire inspections. The public use alleged in this count was for the purpose of serving the plaintiff's property and business and is nothing more than the normal and necessary uses by a municipality in rendering such services to its citizens. Other "public uses" alleged in this count are not described and amount to no more than conclusions of the pleader.

"The only essential elements of a valid dedication of lands to the public are: (1) an intention of the owner to dedicate to a public use, and (2) an acceptance thereof by the public. *Tift v. Golden Hardware Co.*, 204 Ga. 654, 655 (4) (51 SE2d 435)." *Chatham Motorcycle Club v. Blount*, 214 Ga. 770, 775 (107 SE2d 806). "There may exist, however, an implied dedication; but whether express or implied, an intention on the part of the owner to dedicate his property to the public use must be shown. . . . When an implied dedication is claimed, the facts relied on must be such as to clearly indicate a purpose on the part of the owner to abandon his personal dominion over the property and to devote it to a definite public use." *Dunaway v. Windsor*, 197 Ga. 705, 707 (30 SE2d 627). However, "The mere use of one's property by a small portion of the public, even for an extended period of time, will not amount to a dedication of the property to a public use, unless it appear clearly that there was an intention to dedicate, and that this dedication was accepted by the public authorities." *Healey v. City of Atlanta*, 125 Ga. 736, 738 (54 SE 749); *Chatham Motorcycle Club v. Blount*, supra. The general demurrer to Count 4 was properly sustained.

■ Enumerations of error 5, 6 and 7, relating to the sustaining of certain special demurrers, have been carefully considered by the court and are without merit.

■ Enumeration of error 8 complains of the overruling of three objections to those portions of the affidavit of Glenn S. Loudermilk relative to adverse use and the intention to adversely use the alley. The objections were that these statements were ultimate issues to be decided by the trior of facts and that they were conclusions of the witness.

Adverse possession is the ultimate question to be decided here

but where design or intent is relevant to an issue, it may be proved by the evidence of the person himself testifying directly as to what his intention was in the given instance. Although such evidence is not conclusive on the trior of facts, it is to be considered with all the facts and circumstances of the case in determining the real intention of the witness. *Hale v. Robertson,* 100 Ga. 168 (1) (27 SE 937); *Acme Brewing Co. v. Central of Ga. R. &c. Co.,* 115 Ga. 494 (6) (42 SE 8); *Alexander v. State,* 118 Ga. 26 (4) (44 SE 851); *Nichols v. Ward,* 27 Ga. App. 501 (2) (108 SE 832).

We have carefully reviewed the affidavit and the objections thereto and find that the trial court erred in overruling the objections set out in Enumerations of error 8a and 8b for the reason that the portions objected to are conclusions of the witness, and that it did not err in overruling the portion of the testimony objected to in Enumeration of error 8c as to the intention to adversely use said alley.

■ The cross appeal enumerates as error the admission of certain statements made by James K. Rankin to the deceased former predecessor in title of the defendants and Rankin's statement to his partners regarding such conversation. The defendants objected to this evidence on the basis that the witness was incompetent to testify about his conversations or transactions with the deceased where the record shows that he was acting as agent of the plaintiff and where the defendants included the personal representatives of the estate of the deceased.

"Where any suit shall be instituted or defended by . . . the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the . . . deceased person as to transactions or communications with such . . . deceased person whether such transactions or communications were had by such . . . deceased person with the party testifying or with any other person." *Code* § 38-1603 (1).

"No agent . . . of the surviving . . . party, at the time of the transaction testified about, shall be allowed to testify in favor of a surviving . . . party, under circumstances where the principal, a party to the cause, could not testify." *Code* § 38-1603 (5).

The statement of James K. Rankin itself admits the relationship of agency and principal and the trial judge erred in not excluding this evidence.

*Judgment affirmed in part; reversed in part on the main appeal. Reversed on the cross appeal. All the Justices concur.*