28788, 28789. AETNA CASUALTY & SURETY COMPANY v. HORTON; and vice versa.

NICHOLS, Presiding Justice.

The plaintiff in the trial court (appellee here) sued Aetna Casualty and Surety Company as a third party defendant to have an insurance policy reformed and to obtain a judgment based upon equitable estoppel.

The history surrounding this litigation is somewhat involved but a brief synopsis is as follows:

In 1959 R. L. Horton, Jr., began a business which he operated under the name of Horton Electric Company. When he began operation of such business he contacted a Mr. Dick Peters (now deceased) of a local insurance firm to obtain insurance. The policy was written by Mr. Peters with a company not a party to the litigation and in the following years changed to another company and then to the defendant insurance company by Mr. Peters. There was no basic change in the coverage until after the incident which resulted in the present litigation. In 1967, a light fixture installed by Horton Electric Company on

premises owned by the Greyhound Corporation and leased to Mr. and Mrs. Embry Smith doing business as Townhouse Interiors fell on Mrs. Ammons causing injuries which necessitated her hospitalization. The incident was reported to the insurance company within 3 days and an investigation begun. Some three months later the insurance company notified Horton that no coverage existed.

When litigation was instituted by Mr. and Mrs. Ammons against Horton, the Smiths and Greyhound Corporation, Horton filed a third-party complaint against the insurer in which it was contended that coverage existed under the terms of the policy. After a separate trial was ordered on the third-party complaint the trial court granted a judgment on the pleadings for Horton. This judgment was reversed by the Court of Appeals. See *Aetna Casualty &c. Co. v. Ammons,* 125 Ga. App. 74 (186 SE2d 495). On the same day the Court of Appeals affirmed verdicts against Horton and the Smiths but reversed as to the Greyhound Corporation (*Horton v. Ammons,* 125 Ga. App. 69 (186 SE2d 469)), and on application for a writ of certiorari by the Smiths the judgment of the Court of Appeals was affirmed. *Smith v. Ammons,* 228 Ga. 855 (188 SE2d 866). Thereafter a judgment of the trial court granting a new trial to Horton and the Smiths was reversed by the Court of Appeals. *Ammons v. Horton,* 128 Ga. App. 273 (196 SE2d 318).

On the trial of the case now under review the jury returned a verdict for Horton and against the insurer as to reformation of the contract and equitable estoppel. Thereafter the trial court granted the insurer's motion for judgment non obstante veredicto as to estoppel but refused a similar motion as to reformation and denied the insurer's motion for new trial. The insurer appealed from the judgments adverse to it. By cross appeal Horton complains of the grant of the judgment non obstante veredicto. *Held:*

1. On the trial of the case Tommy Horton, the son of R. T. Horton, Jr., was permitted to testify, over objection of the insurer, as to the conversation between R. T. Horton, Jr. and Dick Peters, the deceased agent of the defendant insurer.

The evidence disclosed that Tommy Horton at all times pertinent was an employee of his father and worked as an electrician. He has been paid on an hourly basis only and received no bonus, profit sharing or other remuneration from his father.

In *Blount v. Beall,* 95 Ga. 182 (22 SE 52), it was held that a daughter who lived with, and was supported by, her mother was not incompetent to testify as to transactions between her mother and L. J. Gartrell in an action brought by her mother against the personal representatives of L. J. Gartrell, deceased. It was then held: "Whatever personal interest she might have felt in the result of her mother's suit, she had no such legal interest in the thing in controversy as disqualified her as a witness."

The decisions in *Hasty v. Wilson,* 223 Ga. 739 (158 SE2d 915), *Brock v. Gerlach,* 229 Ga. 295 (191 SE2d 38), and similar cases involve "agents" of the surviving party. As was held in *Burke v. Schwarzweiss,* 156 Ga. 116, 118 (118 SE 754), referring to now Code § 38-1603 (5) "This provision does not disqualify all employees of the sane or surviving party. . . This court has ruled that the above provision of . . . the Code does not disqualify the agent to testify to transactions and communications between his principal and a deceased person, in which the agent took no part. . . To disqualify the agent, the agent must be acting in the transaction for and in behalf of his principal."

Where the witness, in relating the conversation between his father and the deceased agent of the insurer, used phrases such as "he told us" or "he said he would send us," such language when considered in connection with the remainder of his testimony as to his relationship to his father's business was not sufficient to require his being declared incompetent to testify.

2. The original policy was written by an agent of the insurer but with another company which he also represented. In later years he wrote the policy with still another company and then with the defendant insurer.

Each policy was written on a policy which could be used for multiple coverages. Each policy was shown to cover "Premises-Operations" and then typed in was this

language: "Electrical wiring—within buildings including installation or repair of fixtures or appliances. . ."

Attached to the policy in question was a "rider" declared by the Court of Appeals to be inoperative since it referred back to a coverage not included on the face of the policy. This "rider" was entitled "Products (including completed operations) Hazard."

Assuming but not deciding that the knowledge and intent of the agent in 1959 could not as a matter of law be binding on the insurer years later when he wrote the policy with the defendant insurer, yet such knowledge and intent together with the special "rider" attached to the policy was sufficient to authorize the jury to believe that the true intent of the policy written was to cover the hazard, that the failure of the insurance to cover such hazard was the result of mutual mistake and that the policy should be reformed. The evidence authorized the verdict and the trial court did not err in overruling the motion for new trial on the usual general grounds, nor did the trial court err in overruling the motion for a judgment non obstante veredicto on this issue.

3.   Error is enumerated on four excerpts of the charge. Those excerpts of the charge have been carefully considered and show no error. Each of these enumerations of error is based upon the contention that under no circumstances could the mistake in the original policy written by the defendant's agent with a different insurance company authorize the reformation of the policy involved here. As shown above, under the facts of this case this contention is without merit.

*Judgment on the main appeal affirmed; cross appeal dismissed. All the Justices concur, except Gunter, J., who dissents.*

ARGUED APRIL 9, 1974 — DECIDED MAY 28, 1974 — REHEARING DENIED JUNE 12, 1974.

*Bouhan, Williams & Levy, Walter C. Hartridge,* for appellant.

*Cowart, Sapp & Gale, George B. Cowart,* for appellee.

GUNTER, Justice, dissenting.

I am of the opinion that a judgment in this case in favor of the appellant was demanded as a matter of law, and I would reverse the judgment below.

The insurance policy involved in this case contained on its face the following: "The insurance afforded is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges shown below or in the attached general liability schedule."

Below this language was a schedule showing various kinds of coverages and the premium charges for each such coverage. Division number four in this schedule of coverages was: "Products (including completed operations)." This schedule further shows that the premiums for this coverage were based on the total sales of the insured. Division four on the face of this policy was left completely blank, showing that no premium was charged for this coverage. The same was true with all of the seven preceding policies that had been issued by the agent to the insured. All of them showed on their face that no premium was charged for this type of coverage.

I would therefore hold that the instant policy and all preceding policies were not subject to reformation. They all showed plainly on their face that no coverage was provided for: "products (including completed operations)."

I think that the insurance carrier was entitled to a judgment in its favor as a matter of law, and I would reverse the judgment of the trial court.

I respectfully dissent.