## ACME BREWING COMPANY *v.* CENTRAL RAILROAD AND BANKING COMPANY OF GEORGIA.

1. When it appears that one who held a deed to described land sold all the property embraced therein to another and executed and delivered to the purchaser a conveyance to the same, it is not necessary for a party seeking to establish the loss of the deed first mentioned to show that it is not in the possession, custody, or control of the grantee in the same, in the absence of proof that he retained possession of the same after he had sold the land which it

covered, the presumption in such a case being that this deed was delivered by him to the person to whom he conveyed the property.

2. Where, after proof of the loss of the original, a certified copy of the record of an instrument purporting to be the deed of a municipal corporation, and reciting that the grantor had caused the common seal of the corporation to be affixed thereto by the clerk of the city, was offered in evidence, and there appeared upon the same, after the signature of the person executing it as mayor, a scroll with the word "Seal" written in it, an objection to its introduction in evidence, upon the ground that the seal of the municipal corporation was not attached to the deed was properly overruled.

3. A deed executed in 1854, purporting upon its face to be made by the Mayor and Council of the City of Macon and to convey to the grantee therein named a described portion of the southwest commons of the city, reciting that the grantor "hath caused these presents to be subscribed to by the Mayor of the City of Macon and the Common Seal of said City to be hereunto affixed by the Clerk of said City," attested by the clerk and sealed with the corporate seal, is the deed of the municipal corporation, although not signed in the corporate name of the municipality, but in the name of a particular person as mayor.

4. In view of other documentary evidence introduced by the plaintiff, there was no error in overruling the objection to the certified copy of the deed from the municipal corporation to the grantee named therein, upon the ground that it did not sustain the allegation of the petition, in that it did not show that the deed conveyed lot 2 in block 12, "according to Schwabb's map."

5. The proof as to the identification and execution of the "Schwabb map" was sufficient to authorize its introduction in evidence.

6. In an action of ejectment wherein the defendant relied upon adverse possession for seven years under color of title, it was not erroneous to refuse to permit a witness for the defendant to testify that its possession was notorious. The testimony would have been simply as to a conclusion of the witness.

7. Where in such a case, under the pleadings, testimony as to the value of the land in controversy, without the improvements placed thereon by the defendant and those under whom it claims, is relevant, the value of the land to be proved is its market value, and not what it may have been worth to the defendant for a particular purpose.

8. It is erroneous for the trial judge to express his opinion as to the effect of evidence in the case ; and this is true though under the evidence there may not be room for doubt as to the correctness of the opinion expressed by the judge.

9. Where the question whether one entered into possession of land in good faith is involved in a case, it is competent for him to testify affirmatively that he paid for it in good faith.

10. It is not erroneous to refuse to allow the introduction of parol evidence as to the contents of a paper alleged to be lost, when the evidence as to its loss fails to show that it is not in the possession of a person who would be a natural and proper custodian of the same.

11. One who purchases land from another, and who, without written evidence of title, is placed by the seller in possession of the same, does not hold under color of title, although his vendor may have what would be color of title in him if he were in possession of the premises.

12. Even granting that the opinion of a witness for the plaintiff, testifying as an

expert, as to the cost of the brick work constituting the foundation upon which certain boilers were erected, was inadmissible because he admitted that he did not know how deep the foundation work extended into the earth, an assignment of error upon the admission of such testimony over the objection of the defendant is without merit, when it appears that this same witness gave precisely the same opinion, based upon a description of the foundation, including the depth to which it extended, given in the testimony of a witness for the defendant.

13. Where in an action for the recovery of land the pleas of the defendant and the evidence make a case to which the act of December 21, 1897, is applicable, and it is admitted that the value of the improvements set up by the defendant exceeds the amount of the mesne profits, it is erroneous to allow the plaintiff to elect to take a money verdict for the value of the land and the mesne profits, and to thereupon charge the jury that, "under the election made by the plaintiff in the case, the jury would have the right, should the plaintiff be entitled to recover, to say what the value of the land was, and what the value of the mesne profits are, and provide further that upon defendant paying the amount of the land and the mesne profits the title to the lot should vest in defendant, and, in the event defendant should not be willing to pay that amount, that it should be sold and the amount devoted to the payment of the amount the plaintiff recovered for the value of the land and the mesne profits."

14. Where, in such a case as that just above stated, the defendant sets up improvements placed upon the land by another person under whom the defendant holds, and the proof shows that the premises sued for, prior to the possession of the defendant, were placed in the hands of a receiver as the property of such third party, the fact that the property was in possession of the receiver will not prevent the plaintiff from recovering mesne profits for the time the receiver held it, if the plaintiff, in the absence of the receivership, would have been entitled to recover mesne profits accruing during this period.

15. Where a city lot has, by lawful authority and grant of the municipal corporation, been permanently enlarged by the addition thereto and the incorporation therein of an encroachment upon a public street, by which the original lot has been so extended as to embrace territory which was formerly a part of such street, the land covered by the encroachment belongs to the person holding the legal title to the lot as it originally stood, although the encroachment may have been granted on the application of another person who claimed to be the owner of the lot. The true owner of the lot, in an action to recover the same and the encroachment, is, upon establishing his title to the former and the existence of the latter, entitled to recover all the land embraced within the lot as enlarged by the encroachment, and also mesne profits thereon, if sued for and proved.

16. There was no merit in the other questions made in the motion for a new trial.

Submitted March 1, — Decided June 4, 1902.

Ejectment.    Before Judge Felton.    Bibb superior court.    July 11, 1901.

*Estes & Jones* and *Hardeman, Davis, Turner & Jones,* for plaintiff in error.    *Hall & Wimberly,* contra.

FISH, J.  The Central Railroad and Banking Company brought an action of ejectment against the Acme Brewing Company, to recover "part of lot 2 in block 12 in the southwestern commons of the city of Macon, as fully described and laid out by Augustus Schwabb, city engineer, in the map and survey made by him of that portion of the city of Macon known as the southwestern commons of said city, said map being made in October and November, 1851, and being the official map and survey of that portion of the city of Macon," the tract sued for being also described by metes and bounds, and including an encroachment upon Hammond street, which was one of the boundaries of the same.  There was also a count for mesne profits.  ·  In addition to the plea of not guilty, the defendant pleaded prescriptive title based upon adverse possession, under a bona fide claim of right, by it and its predecessors in title, for more than seven years, under written evidence of title; and also that it and its predecessors in title went into possession of the premises sued for in good faith, and, while in the bona fide possession thereof, made permanent improvements thereon of the value of $20,000, and that the land, independently of these improvements, did not exceed in value $300, and had no rental value except such as might be given it by reason of the improvements thus placed upon it.  It prayed that, if its title was held not good, the value of the improvements should be set off against the value of the land, and that the plaintiff be required to pay it the value of these improvements.  Upon the trial the jury returned the following verdict:  " 1st. We the jury find for the plaintiff.  2. We find four hundred dollars for land in dispute for plaintiff.  3.  We find for the plaintiff fifty dollars per year from March 26th, 1891, to date, for rent.  4. We further find the title to vest in defendant when the above has been complied with."  The defendant made a motion for a new trial, which was overruled, and it excepted.

In addition to the general grounds in the original motion for a new trial, there were numerous special grounds contained in an amendment thereto.  The first of these special grounds alleged that the court erred in admitting in evidence " a certified copy, from the record of deeds of Bibb superior court, of a deed made by the Mayor and Council of the City of Macon, dated January 20, 1854, to Thomas P. Stubbs," to " lot of land No. 2 in Block 12 as represented in the plan of survey of the Southwest Commons of

the City of Macon," etc., "which deed closed with the following re-
cital: "In witness whereof, the said party of the first part hath
caused these presents to be subscribed by the Mayor of the City
of Macon and the common seal of said city to be hereunto affixed by
the clerk of said city, and these presents to be delivered the day and
year first above written. [Signed] Ed. L. Strohecker, Mayor, (Seal).
In Presence of A. R. Freeman, C. C. W. S. Williford, Not. Pub."

The motion for a new trial states that to this certified copy "no
seal was attached other than the scroll after the name Strohecker,"
and that there were attached thereto "two affidavits not entitled
in this cause, or in any cause." One of these affidavits was made
by H. M. Comer, dated May 20, 1897, and recited, "that he is the
president and one of the receivers of the Central Railroad & Bank-
ing Company of Georgia, and likewise president of the Central of
Georgia Railway Company, and that the following described in-
strument [the original deed of this copy] is not in his possession,
power, custody, or control, or in the possession, power, custody, or
control of said Central Railroad & Banking Company of Georgia, or
of the Central of Georgia Railway Company, and that he believes
said original deed is lost or destroyed; that he verily believes that
said original deed was at one time in existence and is now lost or
destroyed; and he makes this affidavit in order that a certified copy
of said deed from the record may be introduced in evidence."
The other affidavit, which was dated the 19th of November, 1900,
was similar to this, and was made by John M. Egan, who in the
affidavit described himself as "The president of the Central of
Georgia Railway Company, which has succeeded to the papers,
offices, and property of the Central Railroad and Banking Company
of Georgia." The defendant objected to the introduction of the
certified copy of the deed, upon the following grounds: "1. That
said affidavits that they believed said deed is lost is not sufficient
proof, they not having shown that it is not still in the possession of
Stubbs. 2. That said deed, whilst it purports to have been made
by the Mayor and Council of the City of Macon, is not signed by
the Mayor and Council, the corporate name of said municipal cor-
poration, but is simply signed 'E. L. Strohecker, Mayor.' 3. That
there is a recitation in said deed that it has caused the clerk of
council to affix the common seal of said city to the deed, while no
such seal being in fact attached negatives the idea that there had

ever been a complete execution and delivery thereof.   4. That the presumption is, that if said deed was ever delivered it is still in the possession of Stubbs, the grantee therein.   5. Because the allegation in said declaration is, that they are suing for lot two (2) in block (12) according to Schwabb's map, and said deed does not sustain said allegation, there being no reference whatever to Schwabb's map therein."   After the admission of this certified copy from the record of deeds, the plaintiff put up a witness, Pritchard, who testified that he was "the custodian of the title deeds of the plaintiff," and had been for four years; "that he had made thorough search for said deed among the papers and could not find it;" that it was "not in the possession, custody, or control of the plaintiff;" that he believed "it has been destroyed or lost;" that he was "unable to say that [plaintiff] ever had possession of it;" that he had not "searched among Stubbs's papers for nor called upon [his] executors for or children for it."

1. As the plaintiff claimed under Stubbs, and introduced a deed from Stubbs to the Macon & Western Railroad Company, conveying the same lot described in the deed from the city to him, we do not think there is any merit in the objection that the plaintiff did not show that any search had been made among Stubbs's papers for the original deed from the city to him.   The presumption is that when Stubbs sold and conveyed the lot to the Macon & Western Railroad Company he turned over to his vendee the deed which he held from the city to the property, it not appearing that this deed embraced any other land than that in question.   After he had parted with his title to the property, he was no longer the natural or proper custodian of the deed under which he had held that property alone.

2. The objection that the seal of the municipal corporation was not attached to the deed was not meritorious.   It is true that the certified copy from the record did not show an attempt to reproduce the seal of the municipal corporation, probably for the reason that the clerk of the superior court, who recorded the original deed, could not copy the municipal seal upon the record of deeds. The certified copy did show a scroll, after the name of Strohecker, the mayor, with the word, "Seal," written in it.   It did appear, therefore, that some sort of a seal was attached to the original deed.   So the record showed that there was a seal attached to the

deed, but failed to show its precise character or description. As the deed purported to be that of the municipal corporation, and recited that the grantor, the Mayor and Council of the City of Macon, had caused the common seal of the City of Macon to be affixed thereto by the clerk of the city, and as there was, therefore, no reason why Strohecker, the mayor, who signed the deed, should attach his own seal to the instrument, we think that it may be fairly presumed that the seal which was attached to the deed was the seal of the municipal corporation which executed it.

3. The objection that the deed was signed, "Ed L. Strohecker, Mayor," instead of being signed with the corporate name of the municipality, was properly overruled. It was held in *Mayor and Council of Macon* v. *Dasher*, 90 *Ga.* 195: "By the 32nd section of the act of December 27th, 1847 (Acts 1847, p. 42), the Mayor and Council of the City of Macon, as a municipal corporation, was invested with power to sell any portion of the town common not previously leased or sold, and appropriate the proceeds to the use of the city; and this power was conferred without any express restriction as to the mode of its exercise. As an incident to the power, the corporation could convey by deed to the purchaser any portion of the town common which it contracted to sell; and a deed regular on its face, executed by the mayor, attested by the town clerk, and sealed with the corporate seal, would be the deed of the corporation itself, executed not by its agent or attorney in fact, but by its own corporate head and hand, the mayor, he for this purpose not being a distinct person, but a part of the corporate body."

4. In view of other documentary evidence introduced by the plaintiff, the objection to the certified copy of the deed from the city to Stubbs, upon the ground that it did not sustain the allegation of the petition, in that it did not show that the deed conveyed lot 2 in block 12, "according to Schwabb's map," as there was no reference therein to such map, was not meritorious. The plaintiff subsequently introduced a deed from Stubbs to the Macon & Western Railroad Company, wherein the description of the lot was the same, to which deed this same objection was made. The plaintiff introduced a certified copy, from the minutes of the mayor and city council, of an ordinance passed on December 9, 1851, entitled, "An ordinance to establish certain surveys of the city lands made by Augustus Schwabb, civil engineer, and to name certain streets

in the City of Macon," from which it appeared that on that date the city adopted "the plan of the survey made by Augustus Schwabb, civil engineer, of the southwest commons.". The deed was executed in 1854, and as there was no evidence whatever that the plan of the survey of the southwest commons had been changed prior to its execution, it is to be presumed that when it described a lot, in the southwest commons, by its number and the number of the block in which it was located, it had reference to the map or plan of Schwabb, which had been previously adopted by the city.

5. Another ground of the motion for a new trial was, that the court erred in admitting a map upon which was inscribed the following: "Map of City lots on the Southwestern Commons of the City of Macon, laid out at the request of His Honor The Mayor of the City of Macon, in the Months of October and November, 1851, by Augustus Schwabb, C. E." In connection with this map the plaintiff introduced the certified copy of the municipal ordinance above referred to. The objections urged to the admission of this map were: " 1. There is no proof of the identification or execution of the map. 2. That said ordinance does not adopt any map of Schwabb's, but simply endorses a plan." In a note to this ground of the motion the court says: "When the Schwabb map was first tendered in connection with the ordinance, the court stated that he would admit them for the present. Thereupon plaintiff, to prove the execution of the map, introduced the testimony of H. M. Steele, which is set forth in the brief of evidence. After this testimony was introduced, the defendant made no further motion to rule the map out on the ground that its execution had not been proved, or on any ground." It appears from the brief of evidence that Steele testified that he knew Schwabb well, was acquainted with his handwriting and signature, and that he recognized his drafting work and handwriting on the map, and that the figures and printing thereon were in Schwabb's handwriting. We think this testimony effectually removed any objection to the map upon the ground that it had not been identified or its execution proved. The second objection seems a mere play upon words, and is obviously without merit.

6. There was no error in excluding the testimony of a witness for the defendant, that its possession of the land in dispute was notorious. Such a statement by the witness was a mere conclusion on

his part, presumably from facts and circumstances within his knowl-edge.   It would have been proper for the witness to testify to these facts and circumstances, but the conclusion to be drawn from them was for the jury.

7. It was error for the court to allow the plaintiff's counsel, over the objection of counsel for the defendant, to ask one of the defend-ant's witnesses what the land was worth to the defendant for the purpose of extending its building; as the value of the land to be determined by the jury was its market value, and not what it was worth to the defendant for a particular purpose.   But as the mo-tion for a new trial fails to give the answer of the witness to this question, we are unable to say whether or not any testimony by the witness upon this subject was illegally admitted.

8. In one of the grounds of the motion for a new trial a certain portion of the charge of the court upon the subject of adverse pos-session under color of title was alleged to be erroneous, because it contained an expression of the opinion of the court on the evidence. In the charge excepted to the court used the following language: . . " still the evidence of the defendant does show that Troy was in possession of that property for two years without written evi-dence of title; and therefore the defendant is not protected under this section of the code, for the reason that his possession was not accompanied by written evidence of title during the entire seven years of the possession invoked in this case."   It would be hard to find in a charge a more direct expression of opinion upon the effect of evidence.   While under the evidence introduced the defendant signally failed to establish its plea of seven years adverse posses-sion under color of title, yet, under our stringent rule in reference to the expression of an opinion upon the evidence by the trial judge, this portion of the court's charge was clearly erroneous.   Civil Code, § 4334.

9. The court erred in refusing to permit a witness, under whose purchase and possession of the premises the defendant claimed, to testify whether he paid for the land in good faith or not.   *Hale* v. *Robertson*, 100 *Ga.* 168, and authorities cited.   In the case cited Chief Justice Simmons said: " Whether one has acted in good faith or not is better known to himself than to anybody else; and in many cases the statement of the person whose conduct is in ques-tion that he did so act is the only way in which good faith can be

proved. The objection sometimes made to such testimony, that it can not be directly contradicted, and therefore must be of little value, is one which might properly be urged to the credibility of the testimony, but is not one which should render it incompetent. Of course, in cases where the law conclusively presumes bad faith from specific facts, such testimony would be inadmissible."

10. The defendant endeavored to show by the testimony of W. H. Whitehead and Thomas Troy that the former, as the agent of his wife, Mary E. Whitehead, and Thomas F. Thompson, had in 1887 sold the premises in dispute to Troy, but, not having the back deeds thereto at the time, had agreed with Troy that if he, Whitehead, succeeded in finding these deeds, he would make to Troy a warranty deed to the lot, and if these deeds were not found, he would make Troy a quitclaim thereto. Both Whitehead and Troy testified that, at this time, Whitehead gave to Troy some sort of a paper showing this agreement, Troy calling it a receipt and Whitehead speaking of it as a bond for titles. The defendant sought to show by these witnesses that this paper had existed and been lost, and, claiming that it had successfully done so, sought to prove its contents; but the court, upon objection by the plaintiff, rejected the offered evidence as to its contents, and also refused to allow Whitehead to testify to its execution by Mrs. Whitehead and Thomas F. Thompson. Grounds twelve to twenty inclusive, and ground twenty-three, deal with errors alleged to have been committed by the court in excluding this testimony. We are not prepared to say that the court erred in any of the rulings here complained of. The testimony of both Whitehead and Troy showed that, the back deeds referred to not having been found, a quitclaim was made to Troy. Therefore, if the so-called bond for titles was really, as the defendant claimed, executed by Mrs. Whitehead and Thomas F. Thompson and delivered to Troy, it would seem that Troy, when he accepted the quitclaim from them, would naturally have returned this bond to them or to their agent, W. H. Whitehead. The evidence showed that it was not in the possession of either Troy, Mrs. Whitehead, or her husband, W. H. Whitehead, but it failed to show whether it was or was not in the possession of Thomas F. Thompson, who would have been as proper and as natural a custodian of this paper, after it had become functus officio, as Mrs. Whitehead or W. H. Whitehead; and therefore we can not

say that the defendant had shown that this paper had been lost or destroyed. It is true that the witness W. H. Whitehead gave as a reason for his not having called upon Thomas F. Thompson for it, that he attended to all of Thompson's business, and could safely say that Thompson did not have the paper, because he knew that Thompson did not have anything to do with it. But it appears, from the seventeenth ground of the amended motion, that the defendant offered to prove by this same witness that the paper was executed by Thomas F. Thompson and Mrs. Whitehead, and that, if he had been permitted to do so, he would have so testified. If Thompson was one of the parties who executed this paper, we think that, without proof that it was not in his possession, the evidence as to its loss or destruction was not sufficient to show that the court erred in rejecting evidence as to its contents. While we think it would have been proper for the court to permit the witness to testify who signed the paper, without going into its contents or indicating its character, preparatory to proving its loss or destruction, still, for the reasons given above, we do not see how the defendant ·was hurt by the exclusion of this evidence.

11. In another ground of the motion for a new trial it was alleged that the court erred in refusing to permit the defendant's witness, Whitehead, to testify that he, claiming under a deed from Methven S. Thompson to Thomas F. Thompson and Mary E. Whitehead, executed in 1876, put Troy in possession of the land in dispute. There was no error in sustaining the objection to this testimony. The defendant claimed under Troy, and sought to show that Troy, from the time that he took possession of the premises, held under color of title. The deed from Methven S. Thompson to Thompson and Whitehead was, so far as the evidence shows, never in Troy's possession; and as it covered numerous tracts of land besides the one involved in this case, it is entirely improbable that Troy ever had possession of it; and even if he had had it, it could not have been color of title in him. This deed, not having been made to Troy, and never having been in his possession, could not have been color of title in him. Troy could not have been holding under color of title, unless he had some writing which purported to connect him with the title and which defined the limits of his claim. The mere fact that those from whom he purchased may have had what would have been color of title in them, if they had

been in possession of the premises, would not show that when he went into possession he did so under color of title. When he went into possession, he was not holding for those from whom he purchased, but for himself — he was holding adversely to them — and unless he had some writing purporting to connect him with the title, he was not holding under color of title, either for himself or for any one else. The testimony offered was utterly irrelevant, and hence properly excluded.

12. Complaint was made in the motion for a new trial because a witness for the plaintiff, who testified, as an expert, as to the cost of the improvements placed upon the lot by the defendant and those under whom it held, after having testified that he did not know how deep they carried the brick work, was allowed to answer the following question in reference to the cost of the foundation: "Could you approximate it?" To which he answered: "Yes, sir, foundations for boilers of that character could be built for about $800." The objection made to the question was, that the witness, having testified that the foundation was hidden, could not be called upon to fix its value. Even granting that the opinion of the witness as here given was inadmissible, because he admitted that he did not know how deep the foundation work extended into the earth, the assignment of error upon its admission over the objection of the defendant is without merit, as it appears that this same witness gave precisely the same opinion, based upon a description of the foundation, including the depth to which it extended, given in the testimony of a witness for the defendant.

13. At the close of the evidence, plaintiff's counsel elected to take a money verdict for the value of the premises and the mesne profits; to which election defendant's counsel objected, on the ground that they were entitled to have a verdict returned in accordance with the act of 1897. The defendant insisted, then and throughout the whole of the trial, that the plaintiff had no right to elect; that the act of 1897 applied to the case, and the jury should be instructed that, if they found for the plaintiff, they should find the value of the land itself, the amount of the mesne profits, and the value of the improvements placed upon the premises by the defendant and those under whom it claimed, so as to give the parties the alternate rights provided for in that act, and that, in default of either of the parties paying the other as provided for in

the act, the property should be sold and the proceeds divided pro rata between the parties as the act provides. "Though the defendant so insisted, the court failed and refused to give the jury instructions to find the value of the improvements, or to find that the plaintiff should have the right to take said property on paying said value, or, in default of its so doing, that the defendant should have the right to take said property and pay the plaintiff the value of the land and the mesne profits, and, on failure of both to avail themselves of said privilege, that said property should be sold and the proceeds divided between the parties." "Instead of which the court charged the jury, under the election made by the plaintiff in the case, the jury would have the right, should the plaintiff be entitled to recover, to say what the value of the land was, and what the value of the mesne profits are, and provide further that upon defendant paying the amount of the land and mesne profits that the title to the lot should vest in defendant, and in the event the defendant should not be willing to pay that amount, that it should be sold and the amount devoted to the payment of the amount which the plaintiff recovered for the value of the land and the mesne profits." This ruling of the court was alleged in the motion for a new trial to be erroneous. We think the point meritorious. Under the act of Dec. 21, 1897 (Acts 1897, p. 79), the defendant, as a bona fide purchaser of the premises in dispute, had the right to have the jury, in the event that they found for the plaintiff, to find the present value of the land without the improvements placed thereon by the defendant and those under whom it held, the amount of the mesne profits, and the value of these improvements, so that the parties could be placed in a position where they could exercise the alternate rights provided for by the act. In this case, it being admitted that the value of the improvements made by the defendant and those under whom it claimed exceeded the value of the mesne profits, the court should have instructed the jury that, if they found the plaintiff was entitled to recover, they should find the present value of the land without the improvements, the value of the mesne profits, if any, and the present value of the improvements placed upon the premises by the defendant and those under whom it held. Upon such a verdict being rendered, the alternate rights provided for by the act would be as follows: First, the plaintiff would have the right to recover the land itself, upon pay-

ment to the defendant of the excess in value of the improvements over the mesne profits; second, upon the plaintiff's failure to make this election within the time fixed by the decree of the court, the defendant would have the right, by paying to the plaintiff the value of the land and the mesne profits, to acquire all the plaintiff's right and title to the premises; third, upon failure of the defendant to avail itself of this option, within the time fixed for this purpose by the decree of the court, the land should be sold by a commissioner appointed by the court, and the net proceeds of such sale divided between the parties plaintiff and defendant, in the ratio or proportion that the value of the land bore to the amount by which the value of the improvements exceeded the value of the mesne profits. The plaintiff had no right to elect to take a verdict for the value of the premises in dispute and the mesne profits. No such election is provided for by the act in question. The time for making an election does not arrive until after the verdict is rendered and the decree of the court has been entered. Still if the plaintiff had simply announced that, in the event the jury should find in its favor, it would decline to take the property upon the conditions prescribed by the act, there would have been no impropriety in its doing so. This would simply have amounted to a refusal, in advance, to exercise the option to which it would be entitled under the provisions of the act. But it could not deprive the defendant of the choice which would then have been left to it, to either take the property, upon paying to the plaintiff the value of the land and the mesne profits, or to have the premises sold by a commissioner appointed by the court and the net proceeds of such sale distributed between itself and the plaintiff in the proportions prescribed by the act. The error committed by the court was in assuming that the plaintiff, if entitled to recover, had the right, in any event, to recover in money the full value of the land without the improvements, and the full value of the mesne profits. It had no right to such a recovery, because, by waiving its own option to take the land upon the conditions prescribed by the statute, it could not deprive the defendant of its right to also decline to take the premises upon the terms provided by the law, and to stand upon its right, under such circumstances, to have the land sold by a commissioner and the net proceeds apportioned between the plaintiff and itself, as the statute prescribes.

14. It was alleged in the motion that the court erred in charging the jury that if the plaintiff was entitled to recover, it was entitled to recover mesne profits for four years prior to the bringing of the suit. The error assigned is, that this charge authorized the jury to find mesne profits during the period of time while a receiver of the court held possession of the premises, and before the defendant went into possession. It appears from the evidence that one of the defendant's predecessors in title was the Macon Brewing Co.; that it became insolvent, and its property was placed in the hands of a receiver, who took possession of and held the land in controversy as the property of that company. As the defendant claimed under the Macon Brewing Company and relied upon its possession under color of title, and also claimed that, in the event the plaintiff recovered, it was entitled to credit for all the improvements placed upon the land by itself and those under whom it held, including improvements erected thereon by this brewing company, it was properly chargeable with mesne profits which accrued during the time this company held possession. *Mills* v.' *Geer*, 111 *Ga.* 276. The receiver took possession of and held the premises as the property of the Macon Brewing Company, and, relatively to the plaintiff, his possession was but a continuance of the possession of that company. It is true that, in one sense, his possession was the possession of the court, but the court, through him as its officer, held the property as the property of the Macon Brewing Company and administered it as such, applying the proceeds realized from its sale to the debts of that corporation. When the defendant, by its pleas, went beyond the possession of the receiver and claimed credit for the improvements placed upon the land by the Macon Brewing Company, it became liable for mesne profits which accrued during the time that this brewing company and the receiver, whose possession was acquired under the title claimed by that company, held the property. The Macon Brewing Company was responsible to the plaintiff for the possession of the property by the receiver. If it had kept its hands off the property, the receiver would never have been placed in possession of the same, and it would be unjust to the owner of the land to allow the defendant to set up and obtain credit for the improvements made by the Macon Brewing Company, without being chargeable with the mesne profits during the time that the receiver of such company held possession of the premises.

15. The plaintiff sued for the recovery of the lot in dispute as described in its deeds, and an encroachment extending therefrom into Hammond street. One question made by the motion for a new trial, which appears in several grounds thereof, was whether or not the plaintiff was entitled, if it recovered at all, to recover this encroachment and mesne profits upon the same. We have not been able to ascertain from the testimony in the record how, by whom, or to whom this encroachment was granted. The evidence shows that the original lot had been enlarged by the addition thereto of this encroachment upon the original street. Presumably it was granted by the municipal corporation, and it may perhaps be inferred from the testimony that it was granted upon the application of one of the defendant's predecessors in title. The plaintiff in error contends that the plaintiff below showed neither title to nor possession of this encroachment, and, therefore, was not entitled to recover the strip of land embraced in it nor mesne profits upon the same. We apprehend that the encroachment was granted, not to a particular individual or corporation, but to the owner of a particular lot. If, as a matter of fact, it was granted upon the application of a person or corporation not the owner of the lot, the municipal authorities in making the grant must have acted upon the representation and under the belief that the applicant was the owner; for it is inconceivable that they would grant to one person the right to have, possess, and occupy, as an encroachment upon a public street, a strip of land extending from the street boundary of the lot of another person into the street immediately in front of such lot. We can safely assume that the encroachment was granted as appurtenant to the lot; it was added to the same and became a part thereof, and necessarily followed the ownership and title to the lot. It would be very strange, indeed, and as unjust as strange, if one person could, without the consent of the owner, take possession of a city lot belonging to another, and, after doing so, obtain from the municipality an encroachment from such lot into the street upon which it fronted, erect a building partly upon the original lot and partly upon such encroachment — as appears to have been done in this case, and then, when the true owner sought to recover his land, could hold the strip of land embraced in the encroachment, together with the portion of the structure which had been erected thereon, thus completely cutting the lot off from the

street and greatly reducing its value. If the plaintiff was entitled to recover the original lot, it had the right to recover the encroachment which had been added thereto and become a part thereof, and to recover mesne profits on the lot as it stood after being so enlarged.

16. We find none of the other rulings or instructions complained of erroneous, and the questions raised by the grounds of the motion dealing with the same are not of sufficient importance to require any discussion.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*