### THOMPSON *v.* GLOVER, next friend.

1. In a proceeding under the Civil Code, § 4808, against intruders, the defendant can not be evicted if in good faith he claims a legal right to the possession of the land.
2. While on an issue involving "good faith" a party may testify as to his mental state, the jury are not concluded by what he says in reference thereto, but may test its truthfulness by comparing such claim with all the circumstances attending the transaction.
3. Where, however, there were circumstances amply sufficient to warrant the defendant in contending that the deed under which the plaintiff claimed was void because made by the grantor when from her age and mental infirmity she was unable to contract, and he therefore in good faith claimed the right of possession as one of her heirs at law, and there was no evidence to contradict such claim of good faith, a verdict finding him an intruder was contrary to the evidence.

Argued May 20, — Decided June 10, 1904.

Proceeding against intruder.    Before Judge Holden.    Glascock superior court.    December 31, 1903.

Mrs. Lowe was the owner of a tract of land on which she resided with her son, Lawson Thompson, to whom she had rented it. She made a deed shortly before her death, when she was about ninety years of age, conveying this land to her great-grandchildren, the Glovers, subject to a life-estate reserved to herself.    She died in 1900.    In 1902 the Glovers, by their next friend, instituted a proceeding under the Civil Code, § 4808, to eject Lawson Thompson from the land, as an intruder; to which he filed a counter-affi-

davit. From the evidence at the trial it appeared that at and for many years before the time of his mother's death, the defendant was in possession of the land as her tenant, and that he afterwards continued in possession. His son Frank, who, resided in another county, rented the land from the Glovers for the year 1901, and gave them a note for the rent, but it did not appear that he took possession of the premises or sublet to the defendant, or that in renting or giving the note he acted at the instance of the defendant. A justice of the peace, who received the note for collection, testified that it was paid to him, but he did not remember " whether it was Frank or some of the rest of the family that paid it;" that he thought that John Thompson, a son of the defendant, brought him the money; that it was paid either by the defendant or by his son; that it seemed to him the defendant consented to pay the rent, and the son paid the money; that at first the defendant disputed his liability for rent, and said the land was his, and claimed it under his mother; that he (the witness) could not be certain as to the defendant's agreeing to pay the rent, he might be mistaken about that; he " did not charge his mind whether it was Mr. Thompson or one of his boys who afterwards yielded to the payment of the rent;" the best of his recollection was that " the old man consented and the young man brought the money." John Thompson testified that he did not pay the note. Frank Thompson did not testify. The defendant in his testimony denied that he paid the note or consented to its payment. He testified that he protested against its payment, though he promised to reimburse Frank Thompson if Frank should be forced to pay it; that he claimed the land in good faith as an heir of his mother; that at the time the deed to the Glovers was made, and for some years before her death, her mind was weak, and he did not think she had sufficient mental capacity to make a deed or contract of any kind; that the physician who attended her told him that she had not been competent for business in a considerable period; that his attorneys, to whom the facts were stated, told him that he had rights on the premises and advised him to stay there; and that he had remained there continuously since the death of his mother, claiming possession in his own right. The physician referred to and other witnesses testified to the same effect, as to the mental condition of the defendant's mother. Other testimony was in

conflict with this.    The verdict was against the defendant, and his motion for a new trial being overruled, he excepted.

*Rogers & Stephens* and *B. F. Walker*, for plaintiff in error, cited Civil Code, §§ 4808, 4813;  *Ga. Rep.* 114/124;  118/906; 106/293;  100/597;  94/279.

*K. J. Hawkins*, contra, cited *Ga. R.* 69/746;  106/295.

LAMAR, J.  In a proceeding under the Civil Code, § 4808, against intruders, the legality of the possession depends on the legality of the original entry.    *Murdock* v. *Miller*, 21 *Ga.* 368; *McHan* v. *Stansell*, 39 *Ga.* 199 ; *Durden* v. *Clack*, 94 *Ga.* 278.    The issue is good faith, rather than good title.    Of course a party may testify to his mental state, and that he claims possession in good faith. But that does not close the question nor prevent the jury from testing the reasonableness and truthfulness of that statement by comparing it with all the facts and circumstances attending the transaction.  *Baxley* v. *Baxley*, 117 *Ga.* 63.    Had there been any conflict on this subject, or any facts from which a want of good faith could have been inferred, the approval of the verdict by the trial judge would not be disturbed.    But here the uncontradicted testimony is that Mrs. Lowe was extremely aged and very feeble. Even the witnesses for the plaintiff admitted that she was "childish" and "very peculiar."    The testimony of the defendant and of the attending physician went more into details and tended to establish facts calculated to warrant the claim, in the utmost good faith, that she had not mental capacity to make the deed.    When, therefore, the circumstances warranted the contention, and there was nothing to contradict the statement of Lawson Thompson that he in good faith claimed possession of this property as one of her heirs at law, a verdict finding that he was an intruder was contrary to evidence.        *Judgment reversed.    All the Justices concur.*