## 45936. BLANCHARD v. WESTVIEW CEMETERY, INC.

JORDAN, Presiding Judge. The alleged claim of the plaintiff, Mrs. Hazel Blanchard, is predicated on an intentional tort in moving the body of her late husband, Paul Blanchard, and the monument, from one grave site to another. She appeals from the grant of a summary judgment for the defendant.

Paul Blanchard died on August 24, 1968. The next day Mrs. Blanchard, accompanied by a representative of the defendant, selected a grave site, and agreed to purchase what she believed to be the site selected and another, described in the written contract as Lot 350, Section 70, Sites 1 and 2. On August 27, 1968, the body was interred in the cemetery in a site which was satisfactory to Mrs. Blanchard, and which she thought was the site she had selected and had contracted to purchase. In addition to the purchase price of the lot Mrs. Blanchard paid an additional fee for opening and closing the grave.

About September, 1969, an employee of the defendant determined that the grave was in fact located on Lot 344, Section 70, Site 1, a grave site immediately adjacent to Lot 350. Upon being made aware of the discrepancy between the recorded burial site and the actual burial site the defendant's general manager attempted to reach Mrs. Blanchard on one occasion by telephone, but he was unsuccessful. In August, 1969, she had moved to Augusta, but had not informed Westview of her change of address.

Without any further effort to contact Mrs. Blanchard, the general manager then directed the transfer to a grave site one grave site nearer to a road, a distance of some three feet, so that its new location corresponded in fact to the records. This transfer, including the monument, was accomplished without notice to Mrs. Blanchard. When Mrs. Blanchard visited the cemetery and discovered the move she telephoned the office of the cemetery, and was informed by an employee, who examined the contract and interment request and noticed that the lot number on both was the same, that her late husband was buried in the correct location. This employee was unaware of the actual transfer from one site to another. When this employee informed the manager that Mrs. Blanchard had inquired about the grave, he informed Mrs. Blanchard by letter that her late husband was buried in the correct location, but omitted any reference to the transfer.

The contract for the purchase of the lot contains the following: "It is hereby agreed and understood by and between the parties hereto that said burial space(s) are bought subject to the rules of the seller, and the buyer expressly agrees to be bound by all such rules and all amendments and new rules hereafter adopted."

Included among the rules and regulations of the cemetery are the following:

"All interments, disinterments and removals must be made at such time, in such manner and subject to the payment of such charges as fixed by the cemetery management. Rule 3-13."

"The cemetery reserves, and shall have, the right to correct any errors that may be made by it either in making interments,

disinterments or removals, or in the description, transfer, or conveyance of any interment property, either by cancelling such conveyance and substituting and conveying in lieu thereof other interment property of equal value and similar location as far as possible, or as may be selected by the cemetery, or, in the sole discretion of the cemetery, by refunding the amount of money paid on account of said purchase. In the event the error shall involve the interment of the remains of any person in such property, the cemetery reserves and shall have, the right to remove and re-inter the remains to such other property of equal value and similar location as may be substituted and conveyed in lieu thereof. The cemetery shall also have the right to correct any errors made by placing an improper inscription, including an incorrect name or date, either on the memorial or on the container for cremated remains. The cemetery shall not be liable in damages for any error so made." Rule 3-H.

"It shall be the duty of the lot owner to notify the cemetery of any change in his Post Office address. Notice sent to a lot owner at the last address on file in the office of the cemetery shall be considered sufficient and proper legal notification for all purposes." Rule 15-A.

1. The making of an agreement on Sunday, August 25, 1968, for the purchase of a lot in which to bury a spouse who died the previous Saturday is, in our opinion, a work of necessity excepted from the statutory prohibition (former *Code* § 26-6905, now *Code Ann.* § 26-9908) applicable to work on Sunday. See the recent case of *Prosser v. Horis A. Ward, Inc.*, 123 Ga. App. 205 (180 SE2d 270).

2. Regardless of whether Mrs. Blanchard ever received or examined the rules and regulations of the cemetery they are a part of the contract of purchase which she signed. The fact that the final sentence of Rule 3-H is an exculpatory clause purporting to relieve the cemetery from liability has no real relevancy in disposing of the present case, for in our opinion the action of the cemetery in moving the grave to a site corresponding to the record of the site purchased and the site designated for interment is clearly authorized by the provisions of Rule 3-H preceding the exculpatory clause. Being an action authorized under

and pursuant to the contract which is shown to have been executed in a reasonable manner in good faith, it cannot be termed wrongful in any sense of the word to give rise to a claim based on an intentional tort on account of the fact that the transfer was accomplished without the knowledge or approval of the plaintiff. If there be a loss by reason of the emotional impact on the plaintiff, this is clearly a case of damnum absque injuria.

In view of the contract, and the authority of the cemetery under its rules and regulations which were a part of the contract, we consider it immaterial that a genuine issue of fact may exist in respect to the manner in which the error arose, i.e., whether the contract and interment record represent the site actually selected by the plaintiff, or whether the original place of interment is the site selected and which the plaintiff intended to purchase. See *West View Corp. v. Alston,* 208 Ga. 122 (65 SE2d 406); *Goodwin v. Candace, Inc.,* 92 Ga. App. 438 (88 SE2d 723).

3. It is contended that a permit is not required for disinterment and reinterment within the same cemetery, but that such permit is required only when a body is removed from one cemetery to another where transit is involved. This seems to be the clear import of *Code Ann.* § 88-1717 (e) when read in its entirety, the second sentence requiring that "such permit" shall be issued by the registrar in the district where the body was "originally *interred*." But whether or not such a permit was required, such could not within itself give rise to a cause of action or to a claim. The mere violation of a statute, even though it be penal, cannot be relied upon as actionable negligence, unless such violation is the proximate cause of the injury. See *Gulf Oil Corp. v. Stanfield,* 213 Ga. 436 (99 SE2d 209), for a citation of cases supporting this principle of law.

*Judgment affirmed. Bell, C. J., Hall, P. J., Eberhardt, Deen and Quillian, JJ., concur. Pannell, Whitman and Evans, JJ., dissent.*

ARGUED FEBRUARY 2, 1971—DECIDED JUNE 8, 1971—
REHEARING DENIED JULY 9, 1971—

*Sanders, Hester, Holley, Ashmore and Boozer, Thomas R. Burnside, Jr., A. Montague Miller, Fred K. Harvey, Jr.,* for appellant.

*Powell, Goldstein, Frazer & Murphy, Frank Love, Jr., Randall L. Hughes,* for appellee.

PANNELL, Judge, dissenting. Upon examination of the record in this case and the law in reference thereto, I feel constrained to join Judge Evans and dissent from the majority ruling in the case. The majority affirms the grant of a summary judgment for the defendant on the theory that the evidence demands a finding plaintiff consented to the alleged tort because of the rules and regulations of the defendant cemetery which were a part of the contract. I dissent based upon substantially three propositions, one of which was not passed upon by the majority.

1. There is evidence which authorizes a finding that the interment lot selected, bought and paid for, was the lot on which plaintiff's husband was originally buried before his alleged unauthorized disinterment by the defendant, and that the *error* was one of *description in the deed* and not an error of interment; and the contract between the parties wherein the plaintiff consented to disinterment in order to correct errors does not give permission to correct this type of error by moving the body from the lot actually purchased to a lot not purchased, but one described by error in the deed.

The deposition of Paul C. Blanchard, taken by defendant, reads in part: "Q. As I understand it, there was some misunderstanding about the cemetery lots, is that correct? A. As far as I'm concerned there wasn't any misunderstanding, Mr. Hull. We went to the cemetery the day following my father's death, on Sunday, my mother and myself, and I think there were some other members of the family, but I don't recall. At that time, the time we arrived at the cemetery, we spoke with the lady, I believe her name is Mrs. McWilliams, and informed her that we wanted to buy a cemetery lot . . . Q. May I interrupt you—were you talking about getting a family section? A. We were talking about getting a two-grave lot. Q. Just for your mother and daddy? A. That's right, because the rest of the family was spread out around. She suggested this section—I believe it was Section Seventy, I may be mistaken on the

number—and with her in the car we rode around to this section. It was a new section, there were just a few graves in this section, and we stopped the car and got out and looked around, she asked what we thought of it, and it seemed acceptable. It seemed to be in the price category that was, in my opinion, commensurate with my father's estate in life. She—of course, we had our pick of the whole place—she said, 'How about this area right here?' indicating close to the roadway—and we looked. There was a large tree, you know, not too far away, and it was a pleasant site—it was on a hillside—and we all agreed that it looked very nice. She searched around on the ground and finally located an iron pipe. From this iron pipe she looked at her charts and plats and located a section ... Q. Now when you are talking about 'she,' you're talking about the lady representing the people with the cemetery, is that correct? A. That is correct—I believe it was Mrs. McWilliams. After locating this iron pipe she located this particular plot and indicated that this was a two-grave lot, and wanted to know what we thought of it ... This is a particular dislike of mine—in a cemetery, when you are walking, I don't like to step on a grave, and I don't always know where they are, so I liked this because you could see it. It was right close there. I also had the impression that it was very nice, the place she had showed us was not so crowded that you could not pull your car to the curb and get out of the car without having to step right on the grave. There was ample room back from the roadway, and this was to my liking—so with some little discussion among the family members, my mother agreed to buy this plot. We went back to the cemetery office, discussed the details of buying it ... Q. Go on, excuse me. A. That is the sum total of my recollection at this time of what transpired at the cemetery, regarding the buying of this lot—and as I stated at first, I don't think there was any misunderstanding. I think it was clearly understood at that time what was going on. *And, of course, when we went to the burial, which took place the following day, that same lot that we had been shown was opened, and the burial took place* ... Q. Now, the fact of the matter is that he was buried in a lot other that the lot that was sold to you, right? *Mr. Burnside:* I didn't understand what counsel said—the lot that was sold, or the lot that* ... *Mr. Hull:* The lot that was sold to the

family for the purpose of the burial of the father? A. In answer to your question, I'd have to disagree with that proposal. I contend that the lot that was sold to us was the lot that he was buried on . . . Q. In other words, you stated that the lot your father was buried on was the lot that you saw and that you thought, and your mother thought, you had purchased, is that correct? A. That's correct. That's the lot that the lady found after having first found an iron pin in place. After finding that iron pin she located these lots and showed us these lots, and these are the lots that my mother agreed to and subsequently purchased." (Emphasis supplied.) It cannot be seriously questioned that this evidence authorizes a finding that the burial occurred in the lot selected and paid for by the plaintiff and that the error was in the description contained in the deed.

While it is true the cemetery reserved the right "to correct any errors as may be made by it, either in making interments, disinterments, or removals, or in the description, transfer, or conveyance of any interment property," the very section of the rules (3H) of the cemetery reserving such right also specified in what manner the corrections could be made. One of the manners was "either by cancelling such conveyance and substituting and conveying in lieu thereof other interment property of equal value and similar location as far as possible, or as may be selected by the cemetery, or, in the sole discretion of the cemetery, by refunding the amount of money paid on account of said purchase." This clearly refers to correcting an error in a conveyance or deed. What does it say about errors in interment? "In the event the error shall involve the interment of the remains of any person in such property, the cemetery reserves and shall have, the right to remove and re-inter the remains to such other property of equal value and similar location as may be substituted and conveyed in lieu thereof." This seems to only cover an error in placing a body on the wrong lot. If the evidence referred to above be believed by the jury, there was no consent given by the contract to remove the body. It therefore appears that the contract between the parties wherein the plaintiff consented to disinterment in order to correct errors does not give permission to correct this type of error by moving the body from the lot purchased to a lot not purchased,

but described by error in the deed.

2. However, assuming for the purpose of argument that the contract should be construed as giving such permission to disinter the body under these circumstances where there was an error only in the deed, this permission given, by proper construction of the contract, was only a permission to lawfully disinter the body; and the disinterment without a permit under Section 88-1717 (e) of the New Public Health Code (Ga. L. 1964, pp. 499, 591; *Code Ann.* § 88-1717 (e)) was an unlawful disinterment and therefore does not comport with the permission given under the contract. The case under the facts, then, must be considered in the light that the disinterment was done without permission of the plaintiff and without lawful authority. It is not necessary to construe the contract most strongly against the maker to reach this conclusion; unless the language of the contract demands it, we should not assume that it gives consent to do an unlawful act, particularly so in view of Rule 3-A which states that: "All interments, disinterments and removals are made subject to the orders and laws of the properly constituted authorities of the city, county, and state." The defendant, having admitted the disinterment, and the evidence demanding a finding that the disinterment was without the permission of the plaintiff, the defendant is not entitled to a summary judgment unless the last sentence in paragraph 3-H of the rules releases it from liability. This sentence reads as follows: "The cemetery shall not be liable for damages for any error so made." The evidence will authorize a finding that the error here was made in the *disinterment* of the body and its removal to an adjacent lot. Construing the contract most strongly against the maker thereof, this language should be held to relieve the defendant from liability from negligent acts only. I can see no other construction when the word "error" is used in the language of the release. See also *Hawes v. Central of Ga. R. Co.,* 117 Ga. App. 771, 772 (162 SE2d 14).

It then becomes necessary to determine whether the evidence would have authorized a finding by a jury that the disinterment was intentionally made. *From what is said above, it clearly appears that the disinterment was done without the consent of the plaintiff and was done unlawfully, without securing a permit.*

While there is evidence that the defendant sought to contact the plaintiff at her last address to inform her of the proposed disinterment, it also appears from the evidence that when the plaintiff discovered that the disinterment had been made, *the defendant denied that the disinterment had occurred.* Under these circumstances, a jury would be authorized to find that the tort, the removal of the body without the consent of the plaintiff, was intentionally done, rather than being the result of a negligent error. Accordingly, the trial court erred in granting the defendant a summary judgment, the defendant not having shown there was a lack of issues as to material facts to be determined by a jury on the trial of the case. The trial judge should be reversed.

The above expresses my opinion as to a proper disposition of this case. However, I think it appropriate that I discuss some of the contentions that have been made inimical to the conclusion I have reached.

One of these contentions is that the ruling in *Gulf Oil Corp. v. Stanfield,* 213 Ga. 436, 437 (99 SE2d 209) that "[a] breach of duty to the State does not necessarily involve a breach of duty to others. Hence the violation of a penal statute can not be relied upon as actionable negligence, unless such violation is the proximate cause of the injury" precludes a recovery here. In that case, it was held that the erection of a sign without a license near a roadway or upon a roadway was not, as a matter of fact, the proximate cause of the injuries sustained in the case, but that the sole proximate cause of the injury was the intervening act of another party. We have no such situation here for the reasons that (1) this is not an action based on negligence and (2) the breach of duty by not complying with the law in securing a disinterment permit performs two functions in this case (1) destroys the defendant's defense that it had secured the plaintiff's permission and (2) such fact becomes an integral part of the evidence tending to show an intentional tort on the part of the defendant.

The other contention is that § 88-1717 (e) of the New Public Health Code only applies to removing a body from one cemetery to another rather than from one grave to another in the same cemetery "as transit" of the body is contemplated by the permit, required in that section. That section reads as follows: "Permits.

—(a) The funeral director or person acting as such who first assumes custody of a dead body or fetus shall obtain a *burial-transit* permit prior to the final disposition or removal from the State of the body or fetus within 72 hours after death or at least 24 hours before removal from the State. (b) Such *burial-transit* permit shall be issued by the registrar of the district where a satisfactorily completed certificate of death or fetal death is filed. (c) A *burial-transit* permit issued under the law of another State which accompanies a dead body or fetus brought into this State shall be authority for final disposition of the body or fetus in this State. (d) *Burial-transit* permits shall not be required where disposition of fetal remains is within the hospital of occurrence and a registry of such events is maintained by the hospital. (e) A permit for disinterment and reinterment shall be required prior to disinterment of a dead body or fetus except as authorized by regulation or otherwise provided by law. Such permit shall be issued by the local registrar of the district in which the cemetery where the body was originally interred is located to a licensed funeral director, embalmer, or to the person acting as such upon application filed in accordance with the rules and regulations promulgated hereunder. (f) The department shall prescribe all regulations necessary to regulate the disposal, transportation, interment, and disinterment of dead human bodies to the end that requirements of vital registration are met and the protection of the public health promoted." While transit seems to be contemplated by paragraphs (a), (b), (c), and (d) requiring a "burial-transit permit" there is absolutely nothing in paragraph (e) that lends credence to the conclusion that paragraph (e) only applies to the disinterment of a body when it is to be removed to another cemetery. Paragraph (e) can clearly apply to the present case where the body is *in transit* from one grave to another in the same cemetery, and will even cover a situation where a body is disinterred and then re-interred in the same grave.

WHITMAN, Judge, dissenting. I concur in Division 1 of the dissenting opinion of Judge Pannell.

EVANS, Judge, dissenting. In August, 1968, Mrs. Hazel Blanchard purchased a cemetery lot and entered into a written contract with Westview Cemetery, Inc., for burial of her deceased husband, in Fulton County, Georgia. The burial took place within

a day or so from the date of the contract. The written contract stipulated that it was "subject to rules of the seller" but no copy was attached to the written contract, and Mrs. Blanchard never saw a copy of same. It was shown that the principal salesman of the cemetery corporation had never seen a copy of the rules, and, in fact, so far as is disclosed by the record in this case, only one official of said corporation had ever seen the rules.

In September, 1969, after the passage of more than 12 months, the cemetery corporation contends it discovered the burial had taken place upon the wrong lot, and although there was no hurry for so doing, it desired to disinter the corpse and re-inter it on the correct lot. It also moved the grave marker or memorial which it contends it had a right to do to correct its error. See Rule 21-A of its Rules and Regulations.

The cemetery corporation also claimed the right to correct errors under Rule 3-H of its rules, which provides in pertinent part: "The cemetery reserves, and shall have the right to correct any errors that may be made by it either in making interments, disinterments, or removals, or in the description, transfer or conveyance of any interment property. . ."

However, attention is also called to Rule 3-A, that besides being subject to these rules and regulations, "all interments, disinterments and removals are made subject to the orders and laws of the properly constituted authorities of the city, county and state."

The cemetery corporation contends it made one telephone call in an effort to contact Mrs. Hazel Blanchard, and thereafter did absolutely nothing further to provide an opportunity for her and members of her family to be present at the disinterment and re-interment of her husband. It was shown that if a letter had been written to Mrs. Blanchard at her Atlanta address, she would have received it.

No permit for disinterment and re-interment was secured (or even applied for) nor was any funeral director or embalmer in charge of or present at the disinterment and re-interment of the corpse. Three gravediggers performed these rites, and Charles E. Bowen, vice president and general manager of the cemetery corporation, at some later date discussed the matter with them, and two of them were not sure as to how the disinterment and re-in

terment were accomplished, and were not sure whether the vault was picked up out of the grave or whether it was "just moved down." The said corporate official arrived after it had all been completed and had no knowledge as to what damage might have occurred to the vault or the casket or the body.

Mrs. Blanchard filed suit for damages against the cemetery corporation in Fulton Superior Court, alleging that "the aforesaid disinterment and re-interment of the body of petitioner's deceased husband was performed by defendant without authority, in violation of law, and without notice to or consent of your petitioner and has resulted in injury and damage to petitioner's peace, feelings, and happiness and has caused your petitioner extreme distress, agony, and mental anguish . . ." Motion for summary judgment was filed by defendant, and granted, and plaintiff appeals.

1. The disinterment and re-interment were accomplished in violation of the statutes of Georgia, and therefore afford plaintiff a cause of action. New Public Health Code, § 88-1717 (e) (Ga. L. 1964, pp. 499, 591; Code Ann. § 88-1717 (e)) deals with this question and provides: "A permit for disinterment and re-interment shall be required prior to disinterment of a dead body or fetus except as authorized by regulation or otherwise provided by law. Such permit shall be issued by the local registrar of the district in which the cemetery where the body was originally interred is located to a licensed funeral director, embalmer, or to the person acting as such upon application filed in accordance with the rules and regulations promulgated hereunder."

Appellee's brief, at pp. 13-14, admits a failure to obtain said permit, and seeks to justify such failure under the following contentions: (a) This law applies only where the corpse is transferred from one cemetery to another cemetery; (b) Subsection (f) of the statute provides that same is to be implemented by regulations issued by the Department of Public Health, and counsel contends "no rules or regulations have ever been promulgated under this law."

This justification is ineffectual as to both grounds. Respecting the question of whether the Department of Public Health has issued such rules and regulations, this court cannot take judicial

notice of that fact, and the bare statement in appellee's brief is not sufficient proof. *Code* § 38-112; *Turner v. Brunswick Distributing Co.,* 95 Ga. App. 651 (98 SE2d 591); *Hubbard v. Ruff,* 97 Ga. App. 251, 256 (103 SE2d 134); *Davis v. General Gas Corp.,* 106 Ga. App. 317 (1a) (126 SE2d 820); *Peoples, Inc. v. Devane,* 114 Ga. App. 597 (152 SE2d 649). But an apparent anomaly in the law exists since Sec. 8 of the Administrative Procedure Act of 1964 (Ga. L. 1964, pp. 338, 346; *Code Ann.* § 3A-108) authorizes the court to take judicial notice "of any rule which has become effective" pursuant to that law. We find no such rules, hence we cannot take judicial notice of any such rule, or even that no such rule has ever been promulgated. See *Weil Bros. Cotton v. Harrold Bros.,* 118 Ga. App. 8 (2) (162 SE2d 309). But the failure of the Department of Public Health to promulgate rules and regulations to implement the statute affords no excuse for the cemetery's failure to apply for a permit. The statute, *Code Ann.* § 88-1717 (e), supra, made it an *absolute requirement that a permit be obtained prior to disinterment,* "except as authorized by regulation or otherwise provided by law." In other words, unless *excused* by regulation or law, the permit "shall be required prior to disinterment. . ." Hence, if no regulation was promulgated excusing failure to secure permit, said permit had to have been obtained prior to disinterment.

Further, as the cemetery wished to disinter the body, and as it had to secure a permit before so doing, the statute makes a clear and definite pronouncement as to the procedure it should have followed in order to have a regulation promulgated as follows: "An interested person may petition an agency requesting the promulgation, amendment or repeal of a rule . . . Within 30 days after submission of a petition, the agency either shall deny the petition in writing (stating its reason for the denial) or shall initiate rulemaking proceedings in accordance with Section 4. . ." See Administrative Procedure Act, supra; *Code Ann.* §§ 3A-104, 3A-109.

It was therefore the duty of the cemetery to apply to the local registrar of the district in which the cemetery was located for a permit, and as it did not even apply, the question of its bad faith or good faith must be determined by a jury.

2. In cases of this kind, the question of good faith is paramount.

It is stated in 22 AmJur2d 572, Dead Bodies, § 23 (1965), that "Mere right or authorization to perform a disinterment and removal is not necessarily decisive. The act must be performed in a decent manner and with due regard of the rights of persons interested."

Again, in *Rivers v. Greenwood Cemetery*, 194 Ga. 524, 526 (22 SE2d 134) the court, after deciding that a husband had the right to move his wife's body from the space where it had been mistakenly buried, encumbered that right with the following condition: ". . . provided this right be exercised in a proper manner, and from motives which do not appear to be unreasonable."

In the case of *McDonald v. Butler*, 10 Ga. App. 845, 849 (74 SE 573), this court held: "The mere absence of a headstone or monument would not excuse the desecration of the grave. When it was discovered, no matter how, that a human body had been interred on the lot, the grave should have been held sacred and the body allowed to remain undisturbed in its last resting place. *Certainly, upon discovery of the grave, the most diligent and searching inquiry should have been made, to discover ownership of the lot and the identity of the person whose remains lay buried there.*" (Emphasis supplied).

Here, the mistake remained undiscovered for more than 12 months, and then, when there was no particular hurry, the cemetery corporation made one telephone call, did not write a letter (which would have been received by Mrs. Hazel Blanchard had it been written and addressed to her) and then, within 30 days, proceeded to disinter and re-inter the body in the absence of the family of the deceased. "Good faith" or "bad faith" of the defendant here is not a matter that can be determined by a judge, but must be determined by a jury.

The question of good faith is ordinarily one of fact for a jury. *McCamy v. Higdon*, 50 Ga. 629, 631; *Lee v. O'Quin*, 103 Ga. 355, 364 (30 SE 356), and cit.; *Chattahoochee Fertilizer Co. v. Quinn*, 169 Ga. 801, 804 (151 SE 496); *Street v. Collier*, 118 Ga. 470, 480 (45 SE 294), and cit.; *Latham v. Fowler*, 192 Ga. 686, 692 (16 SE2d 591). A witness may testify that an act was performed in good faith, which has been held to amount to a statement of fact and not a mere conclusion. *Hale v. Robertson & Co.*, 100 Ga.

168 (27 SE 937); *Acme Brewing Co. v. Central R. &c. Co.*, 115 Ga. 494, 502 (42 SE 8); *Hasty v. Wilson*, 223 Ga. 739, 750 (158 SE2d 915). But if there be facts from which a want of good faith can be inferred, this creates an issue as to a statement as to the mental state of the party that he acted "in good faith." In many instances a presumption of good faith arises in the performance of an act. *Latham v. Fowler*, 192 Ga. 686, 692, supra; *Gurr v. Gurr*, 198 Ga. 493, 502 (32 SE2d 507); *Hearn v. Leverette*, 213 Ga. 286 (99 SE2d 147). But good faith is usually a jury question since it alone must test the reasonableness and truthfulness of the performance of the act by comparing it to all the facts and circumstances attending the transaction. *Baxley v. Baxley*, 117 Ga. 60, 63 (43 SE 436); *Thompson v. Glover*, 120 Ga. 440, 442 (47 SE 935).

If the Department of Health has not issued rules and regulations to implement the law, where did that leave the appellee in this case? It would leave him without a permit and in violation of the law. The brief on behalf of the cemetery recites that the Department of Public Health has not issued rules and regulations implementing the statute as to disinterment of dead bodies. As previously stated, this is not proof of that fact, but it is interesting to note that nothing is stated as to *how and when the cemetery gained this information.* If it had filed a request with the registrar for a permit to disinter (as required by statute), which it did not do, and if the information as to lack of rules and regulations had been gained in that process, this at least might have reflected on the good faith or bad faith of said Cemetery Corporation. But it makes no such contention, and it must be presumed that it did not gain this information until *after* the disinterment of the body, in accordance with *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 5 (126 SE2d 442) which holds: "The party opposing the motion [for summary judgment] is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists and the trial court must give that party the benefit of all favorable inferences that may be drawn from the evidence."

*Code Ann.* § 88-1717, supra, was enacted to afford protection to those who properly need to disinter and re-inter dead bodies, and if appellee successfully knocks down that part of this law as to implementation, by showing no rules and regulations have been issued thereunder, he would be without any protection at all.

The public policy of this State is well established in regard to the deep respect for the burial places of deceased human beings. When a coroner finds it necessary to disinter a body, he cannot do so merely by virtue of his powers as coroner until he first secures the approval and permission of a judge of the superior court. See *Code Ann.* § 21-221; New Health Code §§ 88-2711, 88-2712, supra.

3. The defendant cemetery can not successfully rely on the contract in this case as justification for its conduct. First of all, the contract itself provides in Rule 3-A of Rules and Regulations (of which only one copy seems to have existed) "all interments, disinterments and removals are made *subject to the orders and laws of* the properly constituted authorities of the city, county and state." (Emphasis supplied).

Rule 3-H of those Rules and Regulations purported to grant the right to "correct any errors that may be made by it either in making interments, disinterments, or removals, . . ." But the law writes into each and every contract that it must not violate the law; and any contract made against the statutes or public policy of this State are void. *Code* §§ 20-504, 85-903, 102-106. Here, the contract itself provides that it must comply with the law. What law must be complied with, then, as to disinterment? A permit must first be obtained, by applying to the registrar of the district. *Code Ann.* § 88-1717 (e), supra. If no permit, then no right to remove, regardless of contract. It is as simple as that. If a failure to issue rules and regulations stood in the way of issuing a permit, then under *Code Ann.* § 88-1717 (f), supra, it was the duty of the cemetery to apply to the Department forthwith to promulgate such rules and regulations. It did not have a permit — it did not apply for a permit — and it did not apply to the Department of Public Health to issue rules and regulations so a permit could be granted; nor did it know none was issued until after the suit in this case was brought against it.

4. Finally, why was it necessary to disinter and re-inter the body in the first place? Who made the mistake? While this case is not in equity, equity follows the law, and these equitable maxims apply. *Code* § 37-112. "When both parties are at fault, and equally so, equity will not interfere, but will leave them where it finds them. The rule is otherwise if the fault of one overbalances, decidedly, that of the other." *Code* § 37-113. "When one of two innocent persons must suffer by the act of a third person, he who put it in

the power of the third person to inflict the injury shall bear the loss." Nor has it definitely been shown that an error occurred in the original burial or that the deceased was not properly buried in the first instance in the lot pointed out to his widow she thought was conveyed to her.

5. It has long been recognized in this State that the owner of an easement of burial in a cemetery lot, or one who is rightfully in possession of it, may recover damages from a person or persons who wrongfully enters upon and disinters the remains of persons buried therein. It has further been held, in a suit for wrongfully disinterring a dead body, that if the injury has been wanton and malicious or the result of gross negligence or a reckless disregard of the rights of others, equivalent to an intentional violation of them, exemplary damages may be awarded, in estimating which the injury to the natural feelings of the plaintiff may be taken into consideration. *Jacobus v. Congregation of the Children of Israel*, 107 Ga. 518 (33 SE 853, 73 ASR 141); *Wright v. Hollywood Cemetery Corp.*, 112 Ga. 884 (38 SE 94, 52 LRA 621); *Roumillot v. Gardner*, 113 Ga. 60 (38 SE 362, 53 LRA 729); *Louisville & N. R. Co. v. Wilson*, 123 Ga. 62, 67 (51 SE 24, 3 AC 128).

Thus it appears that the defendant admitted removal of the body from the grave, relying upon verbiage in a covenant. But the law is by implication written into all contracts, and by express terms is written into the contract in question, and requires the issuance of a permit before the body may be disinterred, which permit was not issued or even applied for.

Accordingly, I dissent from the ruling on motion for summary judgment, that the cemetery had full authority to desecrate the grave and remove the body and re-inter it elsewhere, under the above facts and circumstances.